**Charles OKONKWO, Petitioner,**

v.

**Peter LACY, Respondent.**

**No. 94 Civ. 4962 (SAS).**

United States District Court, S.D. New York.

June 2, 1995.

As Amended on Denial of Motion for Reargument Aug. 22, 1995.

Laura Rossi–Ortiz, Karl E. Pflanz, Office of Appellate Defender, New York City, for petitioner Charles Okonkwo.

Vida M. Alvy, Asst. Atty. Gen., Office of Atty. Gen., New York City, for respondent Peter Lacy, Superintendent of Bare Hill Correctional Facility.

### MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Petitioner Charles Okonkwo, a New York State prisoner, filed this petition for a writ of habeas corpus ("Pet.") pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1990 state court conviction, asserting that his Fourteenth Amendment rights and his Sixth Amendment right to a public trial were violated. He argues that the trial court's order to close the courtroom during the testimony of an undercover police officer called by the prosecution failed to meet any of the four requirements for closure set forth in *Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984).

Petitioner appealed his conviction, and the New York State Supreme Court, Appellate Division, affirmed. *People v. Okonkwo,* 176 A.D.2d 163, 574 N.Y.S.2d 186 (1st Dept.1991). The Court of Appeals of New York denied petitioner's application for leave to appeal. *People v. Okonkwo,* 79 N.Y.2d 862, 580 N.Y.S.2d 733, 588 N.E.2d 768 (1992). This action followed.[1]

### I. FACTS

Petitioner Okonkwo was arrested on October 22, 1989, for the sale of fifteen dollars of crack cocaine to undercover officer John Swift of the New York City Police Department, Manhattan South Tactical Narcotics Team. Pet. at ¶¶ 2, 13; Trial Transcript, February 5–6, 1990 ("Tr.") at 3, 28. During this police operation, known as a "buy and bust," Officer Swift acted as a purchaser of the narcotics while a different officer made the arrest. Tr. at 28, 84–86.

Petitioner was tried by a jury in New York State Supreme Court, New York County, and convicted of one count of criminal sale of a controlled substance in the third degree, N.Y. Penal Law § 220.39(1) (McKinney 1989). Pet. at ¶¶ 1, 5, 6. The judgement was entered on March 14, 1990. Pet. at ¶ 2.

█ Prior to trial, New York Supreme Court Justice Jay Gold conducted what is known in this state as a *Hinton* hearing, an *in camera* proceeding to determine the appropriateness of excluding the public during trial testimony. Tr. at 2–11. *See People v. Hinton,* 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973). At the hearing, Officer Swift testified under oath that: he would continue to act as an undercover agent in the same area in which he made the buy from petitioner (Cooper Square); he believed his life would be endangered in a working area where his undercover identity was known; he had testified as an undercover before several grand juries; there may be other cases in which he would

---

1. The petition was referred to U.S. Magistrate Judge Lee for report and recommendation by Order of Reference dated July 19, 1994. The report, issued on January 20, 1995, recommended denial of the petition. The reasons supporting the recommendation were read into the record by Magistrate Lee following oral argument on the petition. Transcript of Oral Argument, December 14, 1994, ("Mag.Tr.") at 31–40. Petitioner filed Objections to the Magistrate's Report and Recommendation with this Court on March 16, 1995.

be called to testify; there was no continuing investigation with respect to Okonkwo. Tr. at 3–8.

The court found that Officer Swift would continue to operate undercover in the general area of Cooper Square and that his life might be jeopardized if his identity were exposed. Tr. at 8–11. The trial judge ordered the courtroom closed to the public during the testimony of Officer Swift. Tr. at 11.

## II. *DISCUSSION*

### A. *Closure of Criminal Proceedings to the Public*

■ Eleven years ago, the United States Supreme Court established a four-part test to determine when a suppression hearing may be closed to the public. The Court held that:

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

*Waller,* 467 U.S. at 48, 104 S.Ct. at 2216 (citing *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). Failure to satisfy all four prongs of the test prior to an order of closure is a violation of the Sixth Amendment,[2] and a showing of prejudice need not be made to obtain relief where such violations occur. *See Waller,* 467 U.S. at 49, n. 9, 104 S.Ct. at 2217, n. 9. Federal courts presiding over criminal prosecutions and appeals have consistently applied the *Waller* test to the closure of trial testimony. *See e.g. Vidal v. Williams,* 31 F.3d 67 (2d Cir.1994)

(exclusion of all observers), *cert. denied,* —— U.S. ——, 115 S.Ct. 778, 130 L.Ed.2d 672 (1995); *Woods v. Kuhlmann,* 977 F.2d 74 (2d Cir.1992) (exclusion of defendant's family members); *Ip v. Henderson,* 710 F.Supp. 915 (S.D.N.Y.), *aff'd without opinion,* 888 F.2d 1376 (2d Cir.1989). Therefore, the *Waller* framework controls this action.

### B. *Procedural Default in Habeas Actions*

■ The Court must first consider whether procedural default blocks consideration of the merits. On a petition for a writ of habeas corpus, district courts must respect state procedural rules and consider whether petitioner's claims are procedurally barred.[3] *See Coleman v. Thompson,* 501 U.S. 722, 729–732, 111 S.Ct. 2546, 2553–2555, 115 L.Ed.2d 640 (1991). In deference to principles of federalism and comity,

> [the independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.

*Id.* at 729–730, 111 S.Ct. at 2554. Together with its companion case, *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), *Coleman* limited the scope of the presumption established in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), that federal review is barred only when the state court clearly and expressly notes its reliance on procedural default. *Id.* at 263, 109 S.Ct. at 1043. Today, "the *Harris* presumption is to be applied only after it has been determined that 'the relevant state court decision ... fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law." *Ylst,* 501 U.S. at 802, 111 S.Ct. at 2594 (quoting *Coleman,* 501 U.S. at 740, 111 S.Ct. at 2559).[4] Nevertheless, the

---

**2.** The history and fundamental importance of the Sixth Amendment and the right to a public trial are well settled and documented in both pre and post-*Waller* decisions. *See e.g. Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 563–575, 100 S.Ct. 2814, 2820–2826, 65 L.Ed.2d 973 (1979); *U.S. v. Cojab,* 996 F.2d 1404, 1406–1407 (2d Cir.1993); *United States ex rel. v. Vincent,* 520 F.2d 1272, 1274–1275 (2d Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975).

**3.** In respondent's brief to the Appellate Division, ("Resp.App.Br.") at 23, 25, the state argued that review was barred with respect to the second, third and fourth prongs of the *Waller* test, due to petitioner's failure to specifically object on those grounds at the *Hinton* hearing. The nature of the objections that petitioner raised at trial are discussed at § II.C.1.a., *infra.*

**4.** Upon the issuance of *Harris* and *Ylst,* the Second Circuit reaffirmed its once-disfavored rule

Supreme Court has established that, under certain circumstances, federal courts may reach the merits of a particular claim, even in the face of clear procedural default.[5] "State procedural bars are not immortal ... they may expire ... [if] the last state court to be presented with a particular federal claim reaches the merits." *Ylst*, 501 U.S. at 801, 111 S.Ct. at 2593.

Therefore, this Court must determine the extent to which the merits of petitioner's claims are reviewable.

### C. Whether Closure of the Courtroom during the Testimony of Undercover Officer Swift Was Warranted Under the Circumstances [6]

### 1. Adequate Findings to Support Closure

#### a. Procedural Default

■ On direct appeal to the Appellate Division, the State argued that the "adequate findings" claim failed both on the merits and due to procedural default. The latter argument was premised on petitioner's alleged failure to interpose a timely objection to the trial court's treatment of specific *Waller* re-

quirements, pursuant to N.Y. Criminal Procedure Law (CPL) § 470.05(2) (McKinney 1994).[7]

#### i. The Ruling by the Appellate Division

The Appellate Division did not explicitly address procedural default with respect to the fourth prong of the *Waller* test. That court did, however, find:

> ... we perceive no abuse of discretion by the trial court in granting the [closure] request after hearing.... Inquiry by the People, the defense, and the court, indicated that the officer was then active as an undercover officer in the area of defendant's arrest herein, involved in ongoing narcotics investigations conducted in that area, and likely to be assigned to future undercover narcotics operations in the same area. Thus, jeopardy to the undercover officer's effectiveness and, indeed, to his life by exposure of his identity was properly determined [by the trial court] to be an overriding interest ...

---

derived from *Martinez v. Harris*, 675 F.2d 51 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). *See Quirama v. Michele*, 983 F.2d 12 (2d Cir.1993); *see also Epps v. Commissioner of Correctional Services*, 13 F.3d 615, 618 (2d Cir.) ("the Appellate Division's silent affirmance in the face of the State's argument that the claim was both procedurally barred and meritless should be presumed to rest on state procedural grounds"), *cert. denied*, —— U.S. ——, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994).

**5.** It is noteworthy that New York courts also have permitted review of claims not preserved by objection where cases involve deprivations of fundamental constitutional rights, *People v. Thomas*, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584, 407 N.E.2d 430 (1980) or questions going "to the essential validity of the proceedings," *People v. Patterson*, 39 N.Y.2d 288, 296, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976), *aff'd sub nom. Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *See also Rice v. Hoke*, 846 F.2d 160, 163 (2d Cir.1988); *Rodriguez v. Scully*, 788 F.2d 62, 65 (2d Cir.1986).

**6.** Due to the particular circumstances of this case, though without consequence to the analysis, the *Waller* requirements are most appropriately considered out of order.

**7.** This provision states, in relevant part:

[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time ... or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court.... In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

Respondent does not contend that petitioner's trial counsel failed to object in some form to the closure as a whole. *See* Mag.Tr. at 28. Nor has respondent contended that counsel failed to object to the finding that the government demonstrated a sufficient interest. In fact, the extent to which counsel's objection relates to each individual prong of the *Waller* test is unclear. It *is* clear, however, that the objection incorporated opposition to the closure order as a whole and the reasons stated in support. *See* Tr. at 8–9. No authority controls analysis of this type of objection in the context of the individual *Waller* prongs.

*People v. Okonkwo,* 574 N.Y.S.2d at 187. In this passage, it appears that the Appellate Division directly addressed the merits of the findings prong of the *Waller* test. In order to determine whether the lower court abused its discretion in making its findings substantiating closure, the Appellate Division relied on the record and the trial court's findings.[8] Finding no such error by the trial court, the Appellate Division reached the merits rather than embracing the State's contention of a procedural default.[9]

### ii. *The Hearing before the Trial Court*

Following a brief inquiry into the nature and future of Officer Swift's duties,[10] the trial judge asked defense counsel, Mr. Melvin Reiss, whether he had any argument for the record. This colloquy followed:

> MR. REISS: Just briefly, your Honor. I don't think there has been special circumstances in this case.
>
> THE COURT: I think that what needs to be shown to justify excluding the public is the—basically, putting the—or jeopardizing the continuing undercover activity of the officer, that he says.
>
> And I find this fact: that he continues to function as an undercover officer in the general area in which this crime

occurred; that the—and it's clear to enough then that if anybody were to come into this courtroom and see him, that his knowledge of his identity might well jeopardize his life. It seems to be as simple as he is not out of business.

Counsel objected [11] to the trial judge's finding:

> MR. REISS: .... Why would this case be different from any other case in which an undercover officer testifies that [he] is still operating on the streets. And I don't think there is any difference ... [And in view of various New York state court decisions] this case is no different from every other case. And I don't think there was really anything elicited as far as special circumstances.
>
> Naturally if there were any danger, I would understand, and I would agree with your Honor. I don't think that this is really special.
>
> ....
>
> Just in the sense that we would have to exclude every—we would have to close the courtroom for every undercover cop. And I don't think that's what this case ought to do.... I think if that were the case, to close the courtroom for every undercover cop, I think that might

---

**8.** Although not expressly stated, there is strong support for the argument that the Appellate Division based its ruling primarily on legal, rather than factual, issues arising from the *Hinton* hearing. Indeed, petitioner has consistently asserted that he principally sought review of legal findings. *See* Mag.Tr. at 7–11; Reply Brief in Support of Petition at 4–5.

In addition to the standard of review employed by the Appellate Division, CPL § 470.15(4) lends further support to this position:

[t]he kinds of determinations of reversal or modification deemed to be upon the law include, but are not limited to, the following:
 (a) That a ruling or instruction of the court, duly protested by the defendant, as prescribed in subdivision two of section 470.05, at a trial resulting in a judgment, deprived the defendant of a fair trial ...

**9.** This is one of the critical elements distinguishing Okonkwo's petition from the petitions considered in the cases following *Martinez.* Unlike those cases, the Appellate Division's affirmance of Okonkwo's conviction was not without opinion or a merits determination.

Even if the Appellate Division were deemed to have remained silent on certain procedural issues, the record reflects that it affirmed a bare trial court ruling—one apparently neglecting to consider the controlling precedent of *Waller.* The Appellate Division did not affirm a "reasoned state judgment" needed to lend the foundation for an implicit procedural bar. *See Ylst,* 501 U.S. at 803, 111 S.Ct. at 2594; *Epps,* 13 F.3d at 618–619.

In any case, in the absence of a specific Appellate Division ruling on each *Waller* prong, no bar exists with respect to the prongs on which it was silent. This, simply, is due to the fact that petitioner objected to closure of the courtroom—in essence, to the failure to properly apply the *Waller* test—as a whole. Finally, this Court's consideration of the merits of the "findings" claim is further justified, given the indication in the record that counsel did, in fact, register a timely protest with respect to this prong of *Waller.* *See supra,* note 7.

**10.** *See* Tr. at 3–8.

**11.** The objection, not made formally, may be considered a general protest or implied exception. *See supra,* note 4; CPL § 470.05(2).

be more damaging then [sic] occasionally closing the courtroom.

The trial judge responded with a final statement, reiterating his prior reasoning. Immediately following this, the court ordered closure.

THE COURT: It seems to me that if this officer continues to function in the area in which he described, the knowledge of who he is would result in jeopardizing his life. Isn't that so? That if he continues to function in Manhattan South, knowledge of what he looks like, of who he is, is going to jeopardize his life? Can anybody seriously quarrel with that proposition? [To this question, Mr. Reiss responded in the negative].

Given that, it would seem to me that we ought to make sure that nobody sees him.

My sense is that, from reading the cases, is that it is a matter in which I have some discretion, although the people have a heavy burden, but I think they have met their burden and they have showed he is a functioning undercover officer; that has continuing investigations, as he put it, "maintenance". He keeps going back into the same areas; one of them being the very area involved in this case.

Tr. at 8–11.

### b. *The Merits*

■ The record reflects that the trial court made a conclusory determination rather than well-reasoned findings.[12] This does not necessarily mean that the government interest was insufficient to merit closure in this case. Rather, the *record* simply does not support the closure order.[13] The Supreme Court established,

the right to an open trial may give way in certain cases to other rights or interests,

such as ... the government's interest in inhibiting disclosure of sensitive information.... "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.*"

*Waller,* 467 U.S. at 45, 104 S.Ct. at 2215 (quoting *Press–Enterprise,* 464 U.S. at 510, 104 S.Ct. at 824) (emphasis added).

■ Inquiries and findings supporting closure must be made on a case-by-case basis; they must be tailored to factual and circumstantial particulars. *See e.g., Jones v. Henderson,* 683 F.Supp. 917, 923 (S.D.N.Y. 1989) (citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609, 102 S.Ct. 2613, 2621, 73 L.Ed.2d 248 (1982)). The record is devoid of information as to certain facts that might assist in its review. For example, an inquiry into specific threats against the witness is of considerable importance to any determination affecting closure.[14] A substantiated representation that a threat has been made against an officer strongly supports the government's concern. On the other hand, the absence of a specific threat is not, in and of itself, sufficient to preclude closure. Other important facts include the nature of the threat and the degree to which it is realistic.

Similarly, the trial court failed to inquire into the number of buy and bust operations in which Officer Swift had participated.[15] The answer to this question may reveal, *inter alia,* indications of law enforcement's efforts to protect their undercover officers and the number of people who pose a threat of exposing the officer. The Court did discover that Officer Swift had testified before many grand juries. While this fact would appear to un-

---

**12.** In fact it appears that the trial court could not have performed its duties based on the sparse facts elicited at the hearing.

**13.** Indeed, this Court does not reject the factual findings made by the trial court, per se. Nevertheless, respondent's argument, that the factual findings of the trial court are entitled to a presumption of correctness, pursuant to 28 U.S.C.

§ 2254(d) is inapposite at this time. *See* Resp. Br. at 5.

**14.** *See e.g. Woods,* 977 F.2d at 76–77.

**15.** This information was, however, revealed at trial. Officer Swift stated that he had participated in "[w]ell over 125" buy and busts in hardly more than one year. Tr. at 26.

dermine the need for closure, further inquiry into this topic is warranted. The degree to which exposure to a large number of local citizens affects undercover status relates to the central issue of the value or effectiveness of closure. *Cf. In re Application of the Herald Co.*, 734 F.2d 93, 101 (2d Cir.1984) (inquiring into exposure of information prior to courtroom closure). There was no inquiry as to how Officer Swift arrived at the courthouse (by police car?), how he entered the courtroom (public or private entrance?). Additionally, the record is silent as to what the officer wore to court (police uniform?). Important factors also include possible actions that law enforcement can take to safeguard their officers. For example, an inquiry into the feasibility of disguise in the field (and, perhaps, in court) is merited by the constitutional importance of this issue. It is critical, too, that findings adequately supporting closure clearly demonstrate the factual basis for the other three *Waller* requirements.

■ Accordingly, this Court holds that the bare finding that an undercover officer will continue to operate in a given area and believes personal safety may be jeopardized from exposure of his or her identity does not, in and of itself, satisfy the Supreme Court's guidelines for the application of the Sixth Amendment. To hold otherwise would be to sanction an impermissible *per se* rule and to open the door for over-utilized, under-scrutinized courtroom closure. *Cf. Ip,* 710 F.Supp. at 918; *Jones v. Henderson,* 683 F.Supp. at 923.

*Waller* dictates that closure is to be "rare," permissible only when "the balance of interests [are] struck with special care." *Id.,* 467 U.S. at 45, 104 S.Ct. at 2215; *see also Vidal,* 31 F.3d at 69 ("a courtroom can [not] be closed to a defendant's relatives [simply because] the relatives live (or, presumably, work) in the county where the undercover officer operates. Such a holding would violate the rule that closure is reserved for rare circumstances in which 'the balance of inter-

ests [are] struck with special care'") (citations omitted); *Cojab,* 996 F.2d at 1405 ("power to close a courtroom where proceedings are being conducted during the course of a criminal prosecution ... is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons").

These circumstances involve highly important, but frequently competing, concerns. Consequently, courts must continuously strive to protect both the constitutional right and the governmental interest. Such a delicate balance demands nothing short of close judicial scrutiny and carefully tailored treatment.

### 2. Consideration of Reasonable Alternatives to Closure

■ Petitioner argues that the trial court failed to consider alternatives to full closure of the courtroom during Officer Swift's testimony. Brief of Petitioner In Support of Petition, ("Pet.Br.") at 13–14. It is manifest from review of the short record that the trial court failed to satisfy this prong of the *Waller* test. Nevertheless, this claim is unmistakably procedurally barred by virtue of the Appellate Division's determination that this "argument, first raised on appeal ... is [ ] unpreserved for appellate review by appropriate and timely objection (CPL § 470.05)." *People v. Okonkwo,* 574 N.Y.S.2d at 187. *See Coleman,* 501 U.S. 722, 111 S.Ct. 2546; *Ylst,* 501 U.S. 797, 111 S.Ct. 2590.

Therefore, pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. 636(b)(1)(C), the Court accepts and adopts the Magistrate's recommendation to the extent it referred to the second and third *Waller* requirements.

[This] argument was raised for the first time on petitioner's direct appeal, and the [A]ppellate [D]ivision held that it was not preserved for review in that court. It is accordingly not open for consideration on federal habeas review under *Coleman* ...

Mag.Tr. at 38.[16]

---

**16.** Additionally, petitioner has not raised either standard argument for circumventing the bar: (a) demonstration of cause for the default and actual prejudice or (b) the fact that failure to reach the merits will result in a fundamental

miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565.

A finding of cause would be tenuous in any case, given the absence of claims such as ineffective assistance of counsel. Similarly, a finding of

### 3. *Breadth of the Closure*

■ In respondent's brief to the Appellate Division, this *Waller* prong was inextricably linked to the alternatives prong.[17] Arguments presented by the parties to a state appellate court assist a reviewing court in its determination of what issues were presented where the state court's precise ruling is unknown. *See Martinez,* 675 F.2d at 54–55. While the Appellate Division did not specifically refer to the breadth of the closure,[18] this Court must, nonetheless, construe that opinion as creating a procedural bar to review of this claim. *Id.; see also Epps v. Commissioner of Correctional Services,* 13 F.3d at 618; *Quirama,* 983 F.2d at 13–14.

### 4. *Existence of an Overriding Interest Likely to be Prejudiced*

Respondent does not contend that the argument based on the first *Waller* requirement is procedurally defaulted. Indeed, the merits of this question predominated in the proceedings below. *See People v. Okonkwo,* 574 N.Y.S.2d at 187.

Protecting the life of an undercover officer has been deemed to constitute sufficient justification for closing a courtroom to the public. *See e.g. Woods,* 977 F.2d at 76–77 (quoting *Ip v. Henderson,* 710 F.Supp. at 918); *see also Cojab,* 996 F.2d at 1408; *In re Application of the Herald Co.,* 734 F.2d at 100–101.[19] Moreover, there is precedent for the proposition that, partial closure—that is, where at least some of the proceeding is open to the public—only requires a *substantial reason. See Woods,* 977 F.2d at 77; *see also Herring v. Meachum,* 11 F.3d 374, 380 (2d Cir.1993),

cert. denied, —— U.S. ——, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994).

The problem in this case, however, is that the trial court failed to make sufficient findings, as required by *Waller.* It did not substantiate its assumptions about the officer's and the government's interests. Accordingly, this Court is unable to determine—or to approve the trial court's determination—that closure was supported by a substantial reason or an overriding interest that was likely to be prejudiced.[20]

### III. *CONCLUSION*

For the foregoing reasons, the petition for a writ of habeas corpus is conditionally granted. The case is remanded to the New York Supreme Court for an evidentiary hearing as to the propriety of the closure of the proceedings to the public during the testimony of the undercover officer. Such a remedy has been approved by the Court of Appeals of this Circuit. *See e.g. Senna v. Patrissi,* 5 F.3d 18, 20 n. 1 (2d Cir.1993) (per curiam); *Howard v. Senkowski,* 986 F.2d 24 (2d Cir. 1993); *cf. Waller,* 467 U.S. at 49–50, 104 S.Ct. at 2217; *Jackson v. Denno,* 378 U.S. 368, 391–396, 84 S.Ct. 1774, 1788–1791, 12 L.Ed.2d 908 (1964).

Based on the evidence presented, the trial judge shall, consistent with this opinion and the legal principles enumerated herein, issue explicit findings. If those findings adequately support the order of closure, the conditional grant of the petition shall be vacated, and the writ shall not issue. Alternatively, if the findings compel the conclusion that closure was improper, or if sufficient evidence cannot be adduced at the hearing, then the petition shall be granted.

---

prejudice would be suspect, given the absence in the record of any proof that any particular person was excluded from the courtroom. Tr. at 2, 24.

**17.** "Defendant further argues that the order to close the courtroom was overly broad because, in his view, the trial court did not consider reasonable alternatives to closure." Resp.App.Br. at 22.

Petitioner's brief did not address the distinctions between these two prongs. *See* Brief for Defendant–Appellant ("Def.App.Br.") at 9–10.

**18.** *See People v. Okonkwo,* 574 N.Y.S.2d at 187.

**19.** It should be noted that *In re Herald* was decided one month prior to *Waller,* and the *Cojab* decision did not employ the language, "overriding interest that is likely to be prejudiced." *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216.

**20.** Petitioner submitted to the Appellate Division that an entire line of New York cases had ignored the requirements in *Waller* and were, therefore, suspect. Def.App.Br. at 6–7. While this Court need not address this issue, it is beyond cavil that New York state courts, indeed the courts of all states, must comport with the minimal requirements demanded by the Constitution as explicitly enunciated in *Waller.*

The State may defer release of the prisoner pending final disposition of the writ. If a permanent writ is issued, the State may move the indictment for retrial within sixty days. Absent retrial or appeal, the prisoner shall be released from all custody arising from the conviction in question.

SO ORDERED.

By Opinion and Order dated June 2, 1995 ("the Opinion"), this Court issued a conditional writ of habeas corpus in the above-captioned matter. The case was remanded to the state trial court for an evidentiary hearing and findings with respect to closure of the courtroom to the public during a portion of Petitioner Okonkwo's trial. Petitioner now moves, pursuant to Fed.R.Civ.P. 52(b) and 59(e) for an order amending the Court's findings, issuing additional findings, or altering or amending the judgment. Because the procedural history and facts of this case are set out in the Opinion, they are only briefly discussed below.

## BACKGROUND

Charles Okonkwo, a New York State prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenged his 1990 state court conviction, asserting that his Fourteenth Amendment rights and his Sixth Amendment right to a public trial were violated when the state trial court ordered closure of the courtroom during the testimony of an undercover police officer. Petitioner claims that order failed to satisfy the four requirements for closure set forth in *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984).

This Court held that, by virtue of the decision of the New York State Supreme Court, Appellate Division, two of the four prongs of the *Waller* test were procedurally defaulted.[1] This Court also found that, in violation of the fourth prong of *Waller*, the trial court failed to make findings adequately

supporting closure.[2] Due to the inadequate findings, review of the *Waller* prong requiring an overriding state interest likely to be prejudiced was impossible.[3] The case was remanded to the state trial court "for an evidentiary hearing as to the propriety of the closure of the proceedings to the public during the testimony of the undercover officer."[4] The trial court was directed to issue explicit findings to satisfy *Waller*. This motion followed.

## DISCUSSION

### A. The Legal Standard

Whether petitioner moved pursuant to the appropriate Federal Rules is questionable. Rules 52 and 59 pertain to trials and judgments. Nevertheless, petitioner's intent is clear, and this Court deems that his request constitutes a motion to reargue pursuant to Local Rule 3(j).

Courts in this District have clearly established the standard for moving to reargue.

> The only proper ground on which a party may move to reargue an unambiguous order is that the court has overlooked [important facts or controlling law] which, had they been considered, might reasonably have altered the result reached by the court.

*Adams v. U.S.*, 686 F.Supp. 417, 418 (S.D.N.Y.1988) (citations omitted); *see also, Fulani v. Brady*, 149 F.R.D. 501 (S.D.N.Y. 1993) ("[l]ocal Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court"), *aff'd*, 35 F.3d 49 (2d Cir.1994).

### B. The Merits

#### 1. Remand to State Court

■ The Opinion of this Court fully considered the law and facts of this case. Neither party argues that facts were overlooked or misinterpreted. Rather, the gravamen of

---

**1.** *See* Opinion at pp. 578–579; *People v. Okonkwo*, 176 A.D.2d 163, 574 N.Y.S.2d 186 (1st Dept. 1991) (pursuant to N.Y.Criminal Procedure Law § 470.05(2), failure to interpose timely objection rendered claim unpreserved for appellate review), *lv. denied*, 79 N.Y.2d 862, 580 N.Y.S.2d 733, 588 N.E.2d 768 (1992).

**2.** *See* Opinion at pp. 575–578.

**3.** *Id.* at p. 579.

**4.** *Id.* at p. 579.

the motion regards the nature of the remedy designed by the Court in its June 2 Opinion. Specifically, this Court exercised its discretion in remanding the case to the trial court for explicit findings in compliance with the guidelines set by the Supreme Court and the Court of Appeals for the Second Circuit. *See* Opinion at pp. 576–578, 579.

■ Conditional writs or remands to state courts for findings is a practice supported by considerable authority. *See e.g. Senna v. Patrissi*, 5 F.3d 18, 20 n. 1 (2d Cir.1993) (per curiam); *Howard v. Senkowski*, 986 F.2d 24 (2d Cir.1993); *Suggs v. LaVallee*, 570 F.2d 1092, 1114 (2d Cir.1978); *cf. Waller*, 467 U.S. at 49–50, 104 S.Ct. at 2217; *Jackson v. Denno*, 378 U.S. 368, 391–396, 84 S.Ct. 1774, 1788–1791, 12 L.Ed.2d 908 (1964).[5] Petitioner attempts to distinguish the cases the Opinion relies upon. *See* Brief of Petitioner at pp. 5–7; Opinion at p. 579. However, although those cases obviously have certain legal and factual distinctions from this case, the principle remains the same—District Courts have wide discretion in addressing errors brought before them and fashioning judgments on petitions for habeas corpus. *See e.g. Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987). Such discretion unquestionably includes the power to hold hearings in the District Court, itself, *Pagan v. Keane*, 984 F.2d 61, 64 (2d Cir.1993), but the issue in this case is more appropriately addressed by the state court.

■ General notions of comity counsel that where, as here, an error was committed by a state court, it should be given an opportunity to correct its own error. *Cf. Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights); *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950) ("it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation"). The state court in this case should be given an opportunity to correct its own error, and the state court's findings are critical to the creation of a record for review.[6]

In sum, the Supreme Court's articulation of the importance of remands to state courts strongly supports this Court's Order. In a case that controls and parallels this case in more ways than one, the Court remanded:

> [i]f, after a new [state court] hearing, essentially the same [result is reached], a new trial presumably would be a windfall for the defendant, and not in the public interest.

*Waller*, 467 U.S. at 50, 104 S.Ct. at 2217 (citations omitted). In Okonkwo's case, the trial court may well have determined that closure of the courtroom was appropriate after the proper analysis and fact finding. To order a new trial and deny that court the opportunity to correct its error would be an affront to comity and a potential windfall for the petitioner.

### 2. Procedural Default

■ Petitioner argues that trial counsel's objection to closure of the courtroom constitutes a single claim. Therefore, Okonkwo argues that his objection preserved all elements of the *Waller* test. Okonkwo contends that his general objection to closure, despite no reference to the Supreme Court's test, preserves a single claim. This argument, raised in his prior briefs to this Court, raises no new grounds and cites no controlling law overlooked by this Court. Further, this Court followed the procedural ruling of the

---

5. The Tenth Circuit has decided a case particularly on point. *See Smith v. Atkins*, 678 F.2d 883, 885 (10th Cir.1982) ("[w]here such state court factual determinations are lacking, and are necessary to address the issue presented in the federal habeas proceeding, the district court in its discretion may order an evidentiary hearing in the federal court or, alternatively, may determine that further exhaustion through state collateral proceedings is necessary").

6. Interestingly, respondent finds himself in a somewhat curious position. He concedes that where a federal court determines that material facts were inadequately developed in a state court hearing, 28 U.S.C. § 2254(d)(3) removes the presumption of correctness attached to those findings. Indeed, respondent opposed the petition for habeas corpus in its original briefs, but chose to defend the conditional writ to the extent it calls for a remand and an evidentiary hearing. *See* Brief of Respondent at pp. 4–7.

**582**

Appellate Division. That court interpreted its own state's statute and found that the contemporaneous objection requirement barred consideration of certain elements of the *Waller* test. The parties have not presented, and the Court is not aware of, authority rendering the Appellate Division's prong-by-prong analysis improper. The Court declines to rule that the Appellate Division erred in implicitly ruling that each prong of the *Waller* test constitutes an individual claim requiring preservation by specific objection under the New York statute.[7]

### CONCLUSION

Because petitioner has not demonstrated that the Court overlooked any controlling law or material facts, the Motion to Reargue is denied. Barring appeal, the Order of this Court dated June 2, 1995 currently remains in effect in all respects consistent with this Opinion. This Court retains jurisdiction to review the trial court's findings. The Court specifically directs that such findings provide a sufficient record for substantiating all prongs of the test laid out in *Waller*.[8]

If this Court subsequently determines that the findings do not support closure, the petition will be fully granted and the writ shall issue. If the new findings support closure, the Court will deny the writ. As stated in the June 2 Order, the State may defer release of the prisoner pending final disposition of the writ.[9] The time for filing a notice of appeal or for commencing a new trial runs from the date *this* Opinion and Order issues.

SO ORDERED.

---

**7.** It is noteworthy that last week the Second Circuit decided a case governed by *Waller*. *See United States v. John Doe*, 63 F.3d 121 (2d Cir. 1995). That decision does not cast the reasoning or holding of this Court in a questionable light. Among other things, the Court of Appeals noted that the same approach to the *Waller* test applies regardless of whether the prosecution or the defense requests (or objects to) closure. *Id.* at 128. The panel also noted that concerns for an individual's personal safety can justify closure. *Id.* at 127. Of further import to the case before this Court, the Court of Appeals remanded to the District Court for factual findings consistent with the *Waller* test. *Id.* at 131.

**8.** *See* Opinion at p. 578. The Court also takes this opportunity to reaffirm its substantive holding regarding the findings requirement of the *Waller* test. While the Court declines to enumerate a list of requisite inquiries that future closure orders are compelled to address, any such orders must adhere to a minimal formula. Simply, closure must be grounded upon a reasonable basis in fact, and well-supported findings must document that reasonable basis on the record.

**9.** *See* Opinion at p. 579; *see also Hilton v. Braunskill*, 481 U.S. at 775, 107 S.Ct. at 2118; *Dowd v. United States ex rel. Cook*, 340 U.S. 206, 210, 71 S.Ct. 262, 264, 95 L.Ed. 215 (1951).