104 F.3d 21
 Charles OKONKWO, Petitioner-Appellee-Cross-Appellant,
v.
Peter J. LACY, Superintendent of Bare Hill Correctional
Facility, Respondent-Appellant-Cross-Appellee.
 Nos. 1363, 1693, Dockets 95-2626, 95-2672.
 United States Court of Appeals,
Second Circuit.
 Argued April 15, 1996.
Decided Jan. 3, 1997.
 
 Dian K. McCullough, Department of Law, State of New York, New York City (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Daniel Smirlock, Assistant Attorney General, New York City, of counsel), for Respondent-Appellant-Cross-Appellee.
 Diane E. Courselle, Office of the Appellate Defender, New York City (E. Joshua Rosenkranz, Joseph M. Nursey, Office of the Appellate Defender, New York City, of counsel), for Petitioner-Appellee-Cross-Appellant.
 Before: MINER, WALKER and LEVAL, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Respondent-appellant Peter Lacy, Superintendent of Bare Hill Correctional Facility, appeals from a judgment entered in the United States District Court for the Southern District of New York (Scheindlin, J.) granting a conditional writ of habeas corpus to petitioner-appellee Charles Okonkwo. Okonkwo is a prisoner at the Bare Hill facility, where he is confined pursuant to a judgment of the Supreme Court of the State of New York, New York County, convicting him of criminal sale of a controlled substance in the third degree and sentencing him as a predicate felon to a term of imprisonment of four and one-half to nine years. The district court determined that the state trial court's findings were inadequate to support an order closing the courtroom while an undercover officer testified during the course of Okonkwo's trial. Accordingly, the district court ordered that the writ issue unless the New York court, after an evidentiary hearing, determines upon adequate findings that the closure of the trial proceedings was warranted under established constitutional standards.
 
 
 2
 We modify the judgment of the district court to direct that the writ issue unless Okonkwo is retried within a reasonable time after the issuance of our mandate.
 
 BACKGROUND
 
 3
 On October 22, 1989, New York City Police Officer John Swift was assigned as an undercover member of the Manhattan South Tactical Narcotics Team. In that capacity, it was his duty to investigate street sales of narcotics south of 59th Street in the borough of Manhattan, New York City. At about 6:00 PM on October 22nd, Swift was positioned in the area of Astor Place and Cooper Union when he saw Okonkwo and Ronald Johnson acting in a suspicious manner. Swift approached the two men and asked Johnson if he was "working." Johnson asked what he wanted, and Swift replied, "black caps." Ultimately, Johnson sold Swift three black-capped vials of crack cocaine for $15.00 in cash after procuring the vials from Okonkwo. Okonkwo was about five feet away from Swift when he gave the vials to Johnson, and Swift was able to observe the hand-off clearly.
 
 
 4
 After the sale, Swift walked away from the scene and broadcast descriptions of Johnson and Okonkwo to his back-up team. The team consisted of Officers Rodriguez and Cane, who were parked in a police car nearby. Five minutes after receiving the call, Officers Cane and Rodriguez arrested Okonkwo and Johnson, who were walking side-by-side near the corner of Cooper Square and East Seventh Street. Officer Cane searched Okonkwo, seized the cash that Okonkwo was carrying in his right front pocket, and turned it over to Rodriguez. Swift drove past the arrest scene shortly after the arrest and recognized Johnson and Okonkwo as the men who had sold him the three vials of crack.
 
 
 5
 At the police station later that day, Officer Rodriguez examined the cash seized from Okonkwo, totalling $404.00. She found that $15.00 of the money was part of the pre-recorded "buy" money that she had handed out to undercover officers, including Swift, earlier that day. The contents of the three vials purchased by Swift were tested at the police department laboratory, and each vial was found to contain cocaine.
 
 
 6
 The sale by Okonkwo and Johnson to Swift resulted in Okonkwo's indictment for criminal sale of a controlled substance in the third degree, which requires proof of knowing and unlawful sale of a narcotic drug. N.Y. Penal Law § 220.39(1) (McKinney 1989). After a jury was selected and sworn on February 5, 1990, a pretrial hearing was held in camera on the People's application to close the courtroom during the testimony of Officer Swift. At the hearing, Swift testified as to his modus operandi as an undercover officer. He described the practice of "maintenance," under which officers would return to the location where they previously had made narcotics purchases in an effort to make additional purchases. He testified that he expected to engage in "maintenance" in the area where Okonkwo and Johnson sold him the cocaine.
 
 
 7
 During the hearing, Swift answered "yes" to the prosecutor's question: "Would your life be endangered if your identity as an undercover was exposed to the community in the area where you would operate?" He also answered in the affirmative the trial court's question: "[H]ave there been arrests in cases where you made buys where those cases are not yet disposed of, except for this case?" Defense counsel argued that there were no special circumstances that would justify closure of the courtroom, citing a decision of the New York Court of Appeals, People v. Hinton, 31 N.Y.2d 71, 75-76, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972).
 
 
 8
 Near the conclusion of the hearing, the trial court stated:
 
 
 9
 I think that what needs to be shown to justify excluding the public is the--basically, as I understand the cases, is putting basically, putting the--or jeopardizing the continuing undercover activity of the officer, that he says.
 
 
 10
 And I find this fact: that he continues to function as an undercover officer in the general area in which this crime occurred; that the--and it's clear enough then that if anybody were to come into this courtroom and see him, that his knowledge of his identity might well jeopardize his life. It seems to be as simple as that he is not out of business.
 
 
 11
 He is functioning in the very area in which this case occurred and continues to function in that fashion.
 
 The court also stated:
 
 12
 My sense is that, from reading the cases, is that it is a matter in which I have some discretion, although the People have a heavy burden, but I think they have met their burden and they have showed he is a functioning undercover officer; that has continuing investigations, as he put it, "maintenance". He keeps going back into the same areas; one of them being the very area involved in this case.
 
 
 13
 I will order that the courtroom be closed to the public during his testimony only. All right. We will wait for the jury, and then we will begin.
 
 
 14
 The trial then proceeded, concluding with a verdict of guilty on February 6, 1990. The Appellate Division of Supreme Court affirmed Okonkwo's conviction in a Decision and Order dated September 19, 1991, and the New York Court of Appeals denied an application for leave to appeal on January 5, 1992, without a written opinion. People v. Okonkwo, 176 A.D.2d 163, 574 N.Y.S.2d 186 (1st Dep't 1991), leave denied, 79 N.Y.2d 862, 580 N.Y.S.2d 733, 588 N.E.2d 768 (1992).
 
 
 15
 In its opinion, the Appellate Division stated:
 
 
 16
 [J]eopardy to the undercover officer's effectiveness and, indeed, to his life by exposure of his identity was properly determined to be an overriding interest to defendant's constitutional right to a public trial. Defendant's argument, first raised on appeal, that the trial court might have considered some alternative to closing the courtroom during the undercover officer's testimony, such as having the officer testify behind a screen, is purely speculative and unpreserved for appellate review by appropriate and timely objection.
 
 
 17
 176 A.D.2d at 163, 574 N.Y.S.2d 186 (citations omitted).
 
 
 18
 Okonkwo filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 8, 1994. The proceeding was referred to a magistrate judge and, after argument, the magistrate judge issued a Report and Recommendation that the petition be denied. The recommendation was rejected in the Memorandum Opinion and Order of the district court entered on June 7, 1995, conditionally granting the writ. Okonkwo v. Lacy, 895 F.Supp. 571 (S.D.N.Y.1995). The condition was that the writ would be granted if the state court finds, after an evidentiary hearing and adequate findings, that closure of the trial proceedings was not constitutionally warranted. Id. at 579. The district court applied to the case before it the four-pronged test established in Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), for averting a Sixth Amendment violation for courtroom closure in a criminal case:
 
 
 19
 [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
 
 
 20
 Id. at 48, 104 S.Ct. at 2216.
 
 
 21
 The district court found that Okonkwo's claims of failure to meet the second and third prongs of the Waller test were barred by procedural default. As to the claim based on the third prong, reasonable alternatives to closure, the district court noted that the Appellate Division opinion rejected the claim because it was first raised on appeal and was not preserved by objection in the trial court. As to the claim based on the second prong, breadth of closure, the district court found procedural default because it was "inextricably linked to the alternatives prong," even though "the Appellate Division did not specifically refer to the breadth of the closure." Okonkwo, 895 F.Supp. at 579.
 
 
 22
 The district court sustained Okonkwo's claims based on the first and fourth Waller prongs, apparently deciding that they were not procedurally defaulted. With regard to the fourth prong, findings of fact, the court stated that the trial court made a conclusory determination rather than well-reasoned findings. As to the need to advance an overriding interest, the first prong of the Waller test, the court concluded that the state failed to demonstrate the need. In this regard, the court stated:
 
 
 23
 [T]he bare finding that an undercover officer will continue to operate in a given area and believes personal safety may be jeopardized from exposure of his or her identity does not, in and of itself, satisfy the Supreme Court's guidelines for the application of the Sixth Amendment. To hold otherwise would be to sanction an impermissible per se rule and to open the door for over-utilized, under-scrutinized courtroom closure.
 
 
 24
 Id. at 578.
 
 
 25
 In a motion to reargue, Okonkwo challenged the remand to state court for findings and re-determination. He also challenged the procedural default findings of the district court, contending that his objection to closure constituted a single, preserved claim. The district court rejected these contentions in a Memorandum Opinion and Order dated August 22, 1995. 895 F.Supp. at 580, 581-82 (S.D.N.Y.1995) (opinion on rehearing). The district court adhered to its previous order and added the following:
 
 
 26
 This Court retains jurisdiction to review the trial court's findings. The Court specifically directs that such findings provide a sufficient record for substantiating all prongs of the test laid out in Waller.
 
 
 27
 Id. at 582.
 
 DISCUSSION
 
 28
 The disposition of this appeal is governed by our recent decision in Ayala v. Speckard, 89 F.3d 91 (2d Cir.1996), and by our decision on rehearing in that case, Ayala v. Speckard, 102 F.3d 649 (2d Cir.1996). That case also involved a courtroom closure in a so-called "buy and bust" case, where an undercover officer purchased drugs from an offender who was arrested shortly after the sale. There, the offender was arrested for selling $10.00 worth of crack cocaine and ultimately was convicted in state court for criminal sale of a controlled substance and criminal possession of a controlled substance. The undercover officer testified at a pretrial hearing about his general concern for his life and safety. On the basis of that testimony, the trial judge excluded all spectators from the courtroom during the trial testimony of the officer, who was the principal witness in the case. The conviction was affirmed by the Appellate Division and leave to appeal was denied by the New York Court of Appeals. The habeas petition was denied in the district court, and we reversed, holding that the petitioner was deprived of his Sixth Amendment right to a public trial and citing Waller as the controlling authority for this decision. The factual background in Ayala is almost on all fours with the factual background in the case at bar.
 
 
 29
 The district court in the case at bar found procedural default with respect to the second (closure no broader than necessary) and third (reasonable alternatives to closure to be considered) prongs of the Waller test. The district court erred in this respect. Ayala teaches that it is only necessary for a petitioner to have fairly presented his Sixth Amendment claim in state court to avoid the procedural bar: a petitioner
 
 
 30
 need not have raised the exact constitutional arguments in state court before challenging the constitutionality of the exact same acts under the same constitutional provision in federal court on habeas review.
 
 
 31
 Ayala, 89 F.3d at 94.
 
 
 32
 In the case at bar, Okonkwo first presented his Sixth Amendment claim to the trial court by citing the Hinton decision of the New York Court of Appeals. Hinton was a case involving courtroom closure in which the court specifically noted that "[t]he right to a public trial is guaranteed by the U.S. Const., 6th Amdt., now applicable to the States." Hinton, 31 N.Y.2d at 73 n., 334 N.Y.S.2d 885, 286 N.E.2d 265. When the Appellate Division decided Okonkwo's appeal, it clearly indicated that it was confronted with the constitutional issue of the right to a public trial, citing Waller as governing precedent. Accordingly, despite the Appellate Division's comment that the question of alternatives to courtroom closure was unpreserved for judicial review, the alternatives issue was preserved by the general constitutional challenge to closure.
 
 
 33
 The district court determined that the trial court did not demonstrate the overriding interest likely to be prejudiced, as required by the first prong of the Waller test. The district court held that the mere finding that an undercover officer will continue to operate in a particular area, and fears for his personal safety if his identity is revealed, is insufficient. This comports with our holding in Ayala, where the undercover officer expressed the same generalized concern for his safety in returning to an area of a previous arrest as did Officer Swift in Okonkwo's case:
 
 
 34
 Fatal to the State's assertion of likely prejudice is its failure to establish the nexus between [the officer's] testimony and the ultimate compromise of [the officer's] safety and cover. Although [the officer] testified that he was fearful for his safety should he be required to testify in open court, he did not state any particularized fear resulting from testifying in Ayala's trial....
 
 
 35
 To hold otherwise would establish a rule that, despite the Sixth Amendment, no undercover officer who intends to return to undercover work need testify in open court. We cannot tolerate such a rule in light of the Supreme Court's mandate that closure be justified by a "substantial probability" of prejudice.
 
 
 36
 Ayala, 89 F.3d at 95-96.
 
 
 37
 In examining the issue of the advancement of an overriding interest likely to be prejudiced, the district court failed to consider the interest of a law enforcement agency in maintaining the effectiveness of an undercover officer. In our opinion on rehearing in Ayala, we alluded to such an interest as distinct from the interest in ensuring the officer's safety. Ayala, 102 F.3d at 652. We now identify the interest of a law enforcement agency in maintaining the cover of its agents as a basis for satisfying the first prong of the Waller test if the state establishes a substantial probability of prejudice to that interest in the absence of closure. In this connection, we note that the Appellate Division referred to "jeopardy to the undercover officer's effectiveness," Okonkwo, 176 A.D.2d at 163, 574 N.Y.S.2d 186, as well as jeopardy to his life by reason of exposure of his identity. The trial court judge made references to the same interest:
 
 
 38
 I think that what needs to be shown to justify excluding the public is the--basically, as I understand the cases, is putting basically, putting the--or jeopardizing the continuing undercover activity of the officer, that he says.
 
 
 39
 The interest of law enforcement agencies in courtroom closure in those circumstances is a valid one.
 
 
 40
 In any event, the judgment of the district court must be affirmed as modified in this case for the failure of the state trial court to comply in any respect with the third Waller prong--the need to consider reasonable alternatives to closure. The district court classified Okonkwo's argument as to this prong as procedurally defaulted, but, as demonstrated above, this is not so. It is clear, however, that the state court failed to consider any alternative to closure. In Ayala, we stated: "[P]rior to abridging a defendant's Sixth Amendment rights, trial courts are under an absolute duty to consider alternatives to complete courtroom closure." 89 F.3d at 96.
 
 
 41
 In our decision on rehearing in Ayala, we reiterated our position that it is incumbent upon trial judges to consider reasonable alternatives before closing the courtroom during trial testimony. We specifically rejected the state's argument that the trial court need not consider alternatives to closure in the absence of an objection suggesting alternatives. We also suggested some possible alternatives to closure during the undercover officer's testimony: a strategically placed board to conceal the witness from public view; a disguise of the witness; and a direction that the defendant specify the individuals he desires to be present in the courtroom, with the state to show cause why any such person should be barred. Ayala, 102 F.3d at 653. In the absence of any consideration of alternatives whatsoever, we have no choice but to say that there has not been compliance with the Waller test and, consequently, that Okonkwo has been deprived of his Sixth Amendment right to a public trial.
 
 
 42
 Finally, we are constrained by Ayala to revise the remedy formulated by the district court. The district court ordered that the New York Supreme Court hold an evidentiary hearing to determine whether closure was proper in this case and to make specific findings thereon, subject to the district court's review. If the new findings supported closure, the writ would be denied. If the new findings did not support closure, "the petition will be fully granted and the writ shall issue." Okonkwo, 895 F.Supp. at 582. The court gave some good reasons for the remedy it devised. However, Ayala requires that in a case of this nature, the better remedy is to grant the writ of habeas corpus if the petitioner is not retried within a reasonable time.
 
 CONCLUSION
 
 43
 The judgment of the district court is affirmed, except that the remedy is revised to provide that the writ of habeas corpus shall issue unless the petitioner is retried within a reasonable time. The mandate shall issue forthwith.