■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS ALVARADO, Appellant. [637 NYS2d 436] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Brill, J.), rendered April 10, 1992, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

Upon our review of the record, we find that the trial court's closure of the courtroom to the general public during the testimony of Undercover Police Officer 2544 was improper. At the *Hinton* hearing (*see, People v Hinton*, 31 NY2d 71, *cert denied* 410 US 911) the undercover officer, in articulating the basis of his fear for his safety if he testified in open-court, failed to meet the standard for closure of the courtroom set forth in *People v Martinez* (82 NY2d 436). While the officer testified, *inter alia*, to the number of years that he had worked as an undercover police officer, to the number of open and pending cases that he had in Brooklyn, and that he had cases in which no arrests had been made, his testimony simply served to establish his continued activity in the Brooklyn South TNT area (*see, e.g., People v Davis*, 210 AD2d 345). It did not

link his alleged safety concerns as an undercover police officer, as opposed to a Brooklyn South TNT team member, to his testifying in open court in this case (*see, People v Martinez, supra*, at 443). Moreover, it was not apparent from the officer's testimony that he continued to work *undercover* in the location where the defendant was arrested (*cf., People v Monroig*, 223 AD2d 730 [decided herewith]).

The defendant's remaining contentions are either without merit or unpreserved for appellate review (*see*, CPL 470.05 [2]). Joy, Goldstein and Florio, JJ., concur.

O'Brien, J. P., dissents and votes to affirm the defendant's conviction with the following memorandum: I do not agree with my colleagues' determination that the undercover police officer's testimony at the *Hinton* hearing failed to provide an adequate basis for closure of the courtroom. The undercover officer testified that he had 40 or 50 pending cases in Brooklyn and that he was participant in a so-called long-term buy operation. The officer also testified that, the previous year, he had worked on approximately 100 so-called buy-and-bust cases as a member of the Brooklyn South TNT, and, at the time of the hearing, he was working as a member of that team "at some of the same locations." He further testified that his name had been withheld when he had previously testified in court and that, if his identity became known, it might compromise the long-term case on which he was working and other pending investigations. Finally, he testified that he feared for his safety if the public were permitted in the courtroom.

My colleagues' assertion that it was not apparent from the officer's testimony that he continued to work *undercover* in the location where the defendant was arrested is incorrect. The officer testified to the length of time that he had been working undercover, that he was a participant in a so-called long-term buy operation, and that if his identity became known it would compromise the long-term operation and his safety. The defense counsel never argued that closure of the courtroom was unnecessary because the officer was no longer working undercover in the location where the defendant was arrested. Indeed, in her argument at the close of the hearing, the defense counsel asserted that the officer's testimony established "that he is not so concerned for his safety that he cannot return on a number of occasions to the same location to repeat the same buy and bust operation."

In view of the hearing testimony, I cannot agree with the majority that the trial court erred by closing the courtroom to the public. The court's determination that an open courtroom

might be detrimental to the officer's safety or might compromise pending investigations was not perfunctory. The officer's testimony establishes the requisite relationship among the courthouse, the location of the defendant's arrest, and the location of the officer's assignment at the time of trial (see, People v Pearson, 82 NY2d 436, 443-444; People v Brown, 214 AD2d 438; People v Reece, 204 AD2d 495; People v Thompson, 202 AD2d 454).

Since the defendant's remaining contentions are also without merit, I would affirm. The defendant has failed to establish a Rosario violation (see, People v Rosario, 9 NY2d 286, cert denied 368 US 866). In addition, the trial court did not err by refusing to give the jury a missing witness charge. The defendant waited until both sides had rested at the close of evidence to request the charge. Thus, his request was untimely (see, People v Gonzalez, 68 NY2d 424, 427-428; People v Asphill, 208 AD2d 550; People v Woodford, 200 AD2d 644; cf., People v Erts, 73 NY2d 872).