■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN TOLENTINO, Appellant. [649 NYS2d 436] —Judgment, Supreme Court, New York County (Bruce Allen, J.), rendered May 12, 1993, convicting defendant, after jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of $4^1/_2$ to 9 years imprisonment, affirmed.

Defendant claims that the courtroom was improperly closed for the testimony of the undercover officer, without even a hearing on the prosecution's motion. The prosecutor had represented to the court that the undercover was still operating in the vicinity of this particular transaction, and that the prospective witness was concerned about jeopardizing his safety and compromising such continuing operations. The prosecutor noted that "if Defense Counsel objects, we'd ask for a [Hinton] hearing."

Defense counsel objected to closure on two specific grounds. First, he observed that the undercover did not seem to be threatened by having to sit in the crowded hallway outside the courtroom, where many criminal defendants were passing by; in contrast, defendant anticipated having only one spectator in the courtroom—his girlfriend, who was present throughout the proceedings. Second, counsel faulted the prosecution for trying to create a "melodrama[tic]" effect by closure of the courtroom, implying that the jurors might be swayed by the sudden absence of defendant's constant companion.

With regard to defense counsel's first point, obviously the police undercover's role and function were not identified to the passing public as he sat outside the courtroom, awaiting his summons to the witness stand. As to the second, the Trial Judge sought to fashion a reasonable alternative—which was well within its discretionary authority (*see, People v Jones*, 47 NY2d 409, 414, *cert denied* 444 US 946)—by closing the courtroom to all but the girlfriend. When counsel acknowledged that defendant's girlfriend was the only person he would want in the courtroom, the prosecutor conceded the point, and counsel moved on to other matters. Defendant never requested a formal hearing, and was apparently fully satisfied with the ruling at trial. Any insistence on such formality at this point would grant defendant more relief than he ever asked for.

Even the constitutional right to a public trial can be waived where an objection to courtroom closure is not pursued in a timely fashion (*People v Brown*, 188 AD2d 540, *lv denied* 81 NY2d 882; *People v Marathon*, 97 AD2d 650). Having virtually stipulated to the operative facts and acquiesced in the partial relief without further objection, defendant received the only remedy he desired, and waived the right to an evidentiary inquiry on the issue. Concur—Wallach, Kupferman and Nardelli, JJ.

Murphy, P. J., and Rosenberger, J., dissent in a memorandum by Rosenberger, J., as follows: As the Court of Appeals first articulated in *People v Jones* (47 NY2d 409, 415, *cert denied* 444 US 946) and reaffirmed in *People v Martinez* (82 NY2d 436, 442), "a trial court's own impressions of the general vicissitudes of undercover narcotics work" do not alone provide a sufficient basis for a closure order. Closure of the courtroom is permitted only where the conclusions drawn from an inquiry adequately "assure the court that the defendant's right to a public trial is not being sacrificed for less than compelling reasons" (*People v Jones, supra*, at 414-415). "[S]ince the concept of a secret trial is anathema to the social and political philosophy which motivates our society, the discretion to limit the public nature of judicial proceedings is to be 'sparingly exercised and then, only when unusual circumstances necessitate it' (*People v Hinton*, 31 NY2d 71, 76)" (*supra* at 413).

In this case, closure was ordered based upon the prosecutor's representations that the undercover witness had the following concern: "since he is still acting as an undercover officer in the

same exact location or same vicinity of that area,[1] that it would be a danger to his own life or, at least, certainly to the operation should anyone else come in and watch the trial, and then in a sense 'blow his cover'. knowing he's an undercover narcotics officers *[sic]*". This bare factual recital could apply to almost any undercover officer (*compare, People v Escabar*, 226 AD2d 650).

Since defense counsel opposed the application, specifically citing *Hinton*, it was reversible error for the court to have ignored the requirements of *Waller v Georgia* (467 US 39, 45),[2] adopted in *Martinez (supra)*, by declining to hold a *Hinton* hearing where the officer could provide more detailed testimony and be cross-examined (*People v Parker*, 194 AD2d 335; *see also, People v Torres*, 201 AD2d 413, *lv denied* 83 NY2d 1008 [error to preclude cross-examination at *Hinton* hearing]; *cf., People v Pollock*, 50 NY2d 547, 550 [no request for hearing and defense concedes that public testimony posed danger]), or, at the least, by failing to make an adequate inquiry of either the prosecutor or the witness as to how this specific public trial appearance would pose a danger to his life or damage his other investigations (*People v Jones, supra*, at 414; *People v Cuevas*, 50 NY2d 1022; *People v Alvarado*, 223 AD2d 712; *People v Cordero*, 150 AD2d 258, *affd* 75 NY2d 757 [witness's testimony required where prosecutor's unsubstantiated allegations insufficient to support closure order]).

Allowing the defendant's girlfriend to remain in the courtroom, on consent of the parties, was not a reasonable alternative to closing the proceeding in the circumstances (*see, Waller v Georgia, supra*, at 48). Since it did not adequately protect the defendant's fundamental right to a public trial (US Const 6th Amend; Civil Rights Law § 12; Judiciary Law § 4), I would reverse the judgment appealed and order a new trial.

---

1. The undercover was a member of the Manhattan North TNT Division which covers the area from 218th Street and Broadway to the mid-fifties near Central Park. The arrest in this case occurred in the vicinity of 165th Street and Broadway.

2. *Waller* instructs that "the party seeking to close [a trial] must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure" (467 US 39, 48). None of the four *Waller* requirements was met in this case.