OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 These appeals of two "buy-and-bust” cases present the question whether defendant’s right to a public trial was violated when the trial court ordered the courtroom closed during the testimony of the undercover officer who made the buy. We conclude in the first case that defendant’s right was violated, but uphold closure in the second.
 

 People v Martinez
 

 According to the trial testimony, on February 14, 1990, an undercover officer approached defendant at 158th Street and Melrose Avenue in the Bronx, and obtained two "glossines” of heroin from him in exchange for $20 of prerecorded "buy money.” The officer then returned to his vehicle and radioed a description to fellow members of the Bronx Tactical Narcotics Team (TNT), and defendant was thereafter arrested and identified in a "drive-by” by the undercover.
 

 At trial, the prosecutor requested that the courtroom be closed during the undercover officer’s testimony, defendant objected, and a closed hearing was held to explore the issue. The sole witness at the hearing was the undercover, whose direct testimony in its entirety was as follows:
 

 "Q Detective, are you presently an undercover for Bronx TNT?
 

 "A Yes, I am.
 

 "Q Are you still actively engaged in cases in the Bronx area?
 

 "A Yes, I am.
 

 "Q Do you have any open cases which have still not yet gone to trial?
 

 "A Yes.
 

 "Q Do you fear for your safety if the courtroom is not closed in this case?
 

 "A Yes.”
 

 On cross-examination, defense counsel established that the officer’s open cases were all "street level buy operations” in which arrests had already been made, and the trial court elicited that the officer’s area of operations was "the whole
 
 *440
 
 Bronx.” Defense counsel argued that a sufficient showing had not been made, but the court rejected that argument and ordered the courtroom closed during the undercover officer’s testimony, finding "serious possibility that any pending investigations or the officer’s safety would be jeopardized absent closing the courtroom.”
 

 After open-court testimony by the arresting officer and entry of a stipulation that the glossines contained one grain of heroin, defendant was convicted of third degree criminal sale of a controlled substance, and sentenced to an indeterminate prison term of 4 Vi to 9 years. The Appellate Division affirmed, concluding that the undercover’s testimony warranted closure.
 

 People v Pearson
 

 The evidence at trial revealed that on the afternoon of April 6, 1990, defendant was approached by an undercover officer on the corner of Eighth Avenue and 42nd Street in the Times Square area of Manhattan. At the officer’s request, defendant supplied two vials of crack, and she paid him with $10 of prerecorded "buy money.” The officer then radioed for backup, and defendant and a codefendant were arrested and charged with drug possession and sale.
 

 As in
 
 Martinez,
 
 at defendant’s trial the People requested that the courtroom be closed during the undercover officer’s testimony, and defendant objected. By agreement of the parties, the only spectator in the courtroom prior to the hearing (a person apparently known to the prosecutor and the Judge) was asked to leave, and the courtroom was closed for the hearing
 

 The officer, again, was the sole witness at the hearing. She testified that she was an active undercover officer and had been on duty in the area of West 42nd Street and Eighth Avenue approximately 25 times during the previous 30 days; that she was involved in ongoing investigations in that area, and would be returning to work there immediately after testifying; and that if she were to testify in open court her "cover could be blown and [she] could possibly get killed.” She further testified that she routinely enters courthouses through back entrances to avoid being "exposed” to potential future defendants who might be milling about the lobby. In opposing closure, defense counsel urged that the evidence was not sufficiently compelling to overcome defendant’s right to a public trial; that the undercover’s contemplated "buy-and-busts” were not the sort of ongoing investigation that required
 
 *441
 
 closure; and that more substantial proof of actual danger was required.
 

 Noting that there had been only one spectator to that point, and putting aside any concern for jeopardizing ongoing buy- and-busts "because that’s not what the witness is talking about,” the trial court ruled that the courtroom should be closed because of the officer’s continuing active engagement in the area and consequent personal risk. "[S]he has reason to fear retaliation from people who might put two and two together realizing that she has been the person engaging in the undercover purchase of narcotics from those people who do business in that location.” In response to defense counsel’s argument, the trial court noted that the last time it conducted a
 
 Hinton
 
 hearing it denied the People’s motion to close the courtroom, and that closure was by no means automatic.
 

 After the undercover officer testified in a closed courtroom, the remaining testimony (from the backup officer and two chemists) was taken in open court. Defendant was convicted as charged and sentenced to 5 to 10 years’ imprisonment. The Appellate Division affirmed.
 

 Analysis
 

 Analysis begins with several well-recognized propositions. The guarantee of a public trial (US Const 6th Amend; Civil Rights Law § 12; Judiciary Law § 4) is fundamental, but neither absolute nor inflexible. Trial courts unquestionably have discretionary authority to exclude the public, but must exercise that discretion "sparingly * * * and then, only when unusual circumstances necessitate it.”
 
 (People v Hinton,
 
 31 NY2d 71, 76,
 
 cert denied
 
 410 US 911.) As the case law makes plain, both the defendant and society at large have a vital stake in the concept of a public trial
 
 (see, e.g., Hinton,
 
 31 NY2d, at 73;
 
 Waller v Georgia,
 
 467 US 39).
 

 In
 
 Hinton
 
 itself, the courtroom was closed for the testimony of an undercover agent on a representation that the undercover was still operating actively in the community; that other narcotics investigations were pending; and that other targets in these investigations were present in the courtroom, thus jeopardizing the agent’s life if his identity were exposed. Where "the very presence of other investigatory targets posed a threat to the agent’s life,” we concluded that the requisite unusual circumstances had been shown to justify closure (31 NY2d, at 75). Other examples of unusual circumstances men
 
 *442
 
 tioned in
 
 Hinton
 
 included the presence of gang members in the courtroom, and threats received by the witness.
 

 In
 
 People v Jones
 
 (47 NY2d 409,
 
 cert denied
 
 444 US 946), we overturned the trial court’s discretionary closure, which had been ordered as a matter of judicial notice that undercover narcotics work in New York City was dangerous. As this Court noted, a trial court’s own impressions of the general vicissitudes of undercover narcotics work do not suffice for closure. "There should have been a factual showing that an exception to the norm of a public trial was justified * * * That undercover work at times entails serious threats to the safety of agents was by no means sufficient to connect that threat to this witness.” (47 NY2d, at 415.)
 

 Since
 
 Jones,
 
 our admonition that there should be a factual showing to support closure has resulted in
 
 "Hinton
 
 hearings” where — as in the cases before us — the undercover officer may, in a closed hearing, be examined and cross-examined. Since
 
 Jones,
 
 also, the United States Supreme Court has further particularized the standard for closure, under the Sixth Amendment, which we recognized in
 
 People v Kin Kan
 
 (78 NY2d 54, 58) as a four-pronged test:
 

 "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure”
 
 (Waller v Georgia,
 
 467 US 39, 48,
 
 supra).
 

 In
 
 Kin Kan,
 
 involving gang-related, large-scale drug trafficking, the prospective witness (an accomplice) testified that he was still involved as a confidential informant in an ongoing investigation, that he feared retaliation by defendant’s "people” (but not her family), and that he feared retaliation from persons connected with his continuing informant activity and from their friends and did not want to show his face in public. Even then, however, we agreed with the Appellate Division that the trial court had erred in barring defendant’s family from the courtroom: "as a matter of law under the governing legal principles * * * the delicate balancing of Kan’s individualized right to a public trial against the accomplice witness’s expressed fears of retaliation tips in favor of respondent Kan.” (78 NY2d, at 58.) The requisite "delicate balancing” echoes the
 
 *443
 
 Supreme Court’s caution in
 
 Waller
 
 that, in determining the issue of closure, "the balance of interests must be struck with special care.” (467 US, at 45.)
 

 Applying these precedents to the facts at hand, we conclude that the People’s perfunctory showing in
 
 Martinez
 
 was insufficient to meet the standards for closure repeatedly insisted upon by this Court and the Supreme Court. We agree with defendant’s observation that, were such a showing accepted, we would in effect sanction a rule of per se closure for undercover officers, for the testimony established no more than the officer’s continuing activity as an undercover "in the Bronx area” — more than 41 square miles and 1.2 million residents — and "unparticularized impressions of the vicissitudes of undercover narcotics work in general.”
 
 (Jones,
 
 47 NY2d, at 415.) No reference was made, for example, to associates of defendant or targets of investigation likely to be present in the courtroom, or to threats received. Indeed, no link was made, or even attempted, between the officer’s fear for his safety throughout the Bronx area and open-court testimony in this buy-and-bust case.
 

 While the trial court, reading its ruling into the record, acknowledged that special care must be taken before a courtroom is closed to the public, its holding that "pending investigations or the officer’s safety would be jeopardized absent closing the courtroom” is supported only by the officer’s own assertion that he feared for his safety if the courtroom was not closed.
 

 By contrast, the factual showing supporting closure in
 
 Pearson
 
 more closely approximates the standard reflected in the case law. In her testimony, the undercover officer identified a particular location — Port Authority in Manhattan, the site of defendant’s arrest — readily accessible from the Manhattan courthouse, at which she had functioned daily for a month, and to which she would return as an undercover that very day to complete her work with drug dealers. We cannot say that the trial court abused its discretion in concluding that, in these circumstances, testifying in an open courtroom might endanger the undercover officer’s safety.
 

 Even assuming
 
 Waller’s
 
 first prong was satisfied by evidence that the People established an overriding interest justifying closure, defendant Pearson argues that his conviction should nonetheless be reversed because the trial court made no effort to meet
 
 Waller’s
 
 third prong — that the court
 
 *444
 
 "consider reasonable alternatives to closing the proceeding.”
 
 (Waller;
 
 467 US, at 48.) Before this Court, defendant suggests that a court officer might have been stationed at the door to admit at least those persons who posed no threat to the officer’s safety, or defendant might have been asked to name family members or others who could have been admitted, or that the undercover might have testified in open court from behind a screen, as in
 
 United States v Lucas
 
 (932 F2d 1210, 1216-1217 [8th Cir],
 
 cert denied —
 
 US —, 112 S Ct 399, 116 L Ed 2d 348).
 

 While it is surely the better practice, and indeed may be the required practice, for a trial court explicitly to consider whether closure is broader than necessary, to explore reasonable alternatives to closure, and to make findings adequate to support closure
 
 (see, Waller,
 
 467 US, at 48), on the present record the court’s failure to consider the alternatives defendant now suggests was not error. Defendant’s sole objection and the entire argument before the trial court was concentrated on the sufficiency of the People’s showing for closure. There had been no unidentified spectators in the courtroom from the time the trial started, and defendant made no mention of particular friends or family he wished to have in attendance
 
 (see, by contrast, Kin Kan,
 
 78 NY2d, at 58). Such measures as stationing a guard at the door, taking names and using a screen might well be investigated in future cases, but on this record the trial court did not err in failing to consider them.
 

 Accordingly, in
 
 Martinez,
 
 the Appellate Division order should be reversed and a new trial ordered, and in
 
 Pearson
 
 the Appellate Division order should be affirmed.
 

 Judges Simons, Titone, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 In
 
 People v Martinez:
 
 On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order reversed and a new trial ordered.
 

 In
 
 People v Pearson:
 
 Order affirmed.