■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE VALENZUELA, Appellant. [652 NYS2d 5] —Judgment, Supreme Court, New York County (John Bradley, J.), rendered September 18, 1989, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree, and sentencing him, as a second felony offender, to concurrent terms of from 25 years to life imprisonment, unanimously reversed, on the law and the facts, and the matter remanded for a new trial.

Although trial courts have discretionary authority to exclude the public from a courtroom, such power should be exercised sparingly and only when unusual circumstances necessitate it (*see, People v Martinez*, 82 NY2d 436, 441; *People v Kin Kan*, 78 NY2d 54, 57-58). In the case at bar, after conducting a *Hin-*

*ton* hearing, the trial court ordered the wholesale closure of the courtroom during the testimony of the undercover officers. In so doing, the court expressly excluded four individuals who were identified as defendant's "family members or friends". Review of the evidence adduced on the record reveals that the broad closure order was not warranted. Accordingly, we reverse.

The People argue that the trial court properly sealed the courtroom because the safety of the undercover officers would be compromised if they were to return to the area of defendant's crime or arrest to search for lost subjects. While this generally constitutes a wholly appropriate consideration favoring closure (*see, People v Wells*, 225 AD2d 567, *lv denied* 88 NY2d 970; *People v Ramos*, 222 AD2d 708), it is, under the circumstances of this case, insufficient to justify the broad closure order issued. Here, the undercover officers lacked any specific or concrete plans to return to the area where the transaction originated to look for lost subjects (*People v Green*, 215 AD2d 309 [closure and exclusion of defendant's family improper; officer only engaged in a couple of transactions in the Bronx; no evidence that if officer returned he would play anything other than the "observational role" he played in this case]; *People v James*, 207 AD2d 564 [closure improper; record lacked evidence undercover was still operating in area of defendant's arrest and would return there; assertion of lost subjects in Brooklyn was perfunctory]; *compare, People v Escabar*, 226 AD2d 650, *lv denied* 88 NY2d 984 [closure proper; officer to return to work in area of defendant's arrest, had several ongoing investigations in that area with lost subjects, and had received threats that he would be killed]; *People v Wells, supra* [closure proper; officer to return to area, received threats, and had pending cases with lost subjects from that area]; *People v Monroig*, 223 AD2d 730 [same]; *People v Vargas*, 220 AD2d 630, *lv denied* 88 NY2d 887 [same]).

Here, the hearing testimony established, at best, a remote chance that the undercover officers would someday engage in a search for lost subjects in the area where the buy originated. There was no testimony that there would be any further active involvement by the undercover officers at that location. Essentially, the officers testified that they *might* be asked to return to the area to look for lost subjects, a patently inadequate basis for closure. Moreover, while these two lost subjects were part of the investigation of the drug dealing around 101 Sherman Avenue, the same investigation that culminated in defendant's arrest, the subjects they *might* search for were

actually from two separate buys during the investigation in which *this* defendant was not involved. Thus, the connection between the officers' testimony at this defendant's trial, and the possibility that the lost subjects may enter the courtroom and observe the same, was highly attenuated (*see, People v Kilkelly*, 224 AD2d 446 [no testimony that targets of investigation were *likely* to be in courtroom]).

In light of our conclusion that the People failed to carry their burden of justifying the exclusion of any member of the public, we need not address defendant's claim that the order issued was overly broad to the extent it excluded four individuals identified as defendant's "family and friends." We note, however, that two of these individuals were properly excluded, without objection, on the alternative ground that they would be testifying as defense witnesses at trial. Concur—Sullivan, J. P., Rosenberger, Kupferman, Tom and Mazzarelli, JJ.