**Howard PEARSON, Petitioner–Appellant,**

**v.**

**Charles JAMES, Superintendent of Collins Correctional Facility, Respondent–Appellee.**

**No. 1669, Docket 95–2801.**

United States Court of Appeals, Second Circuit.

Argued June 4, 1996.

Decided Jan. 30, 1997.

---

Diane E. Courselle, New York City (E. Joshua Rosenkranz, Joseph M. Nursey, Office of the Appellate Defender, New York City, on the brief), for petitioner-appellant.

Louis L. Bono, Asst. Atty. Gen., New York City (Dennis C. Vacco, N.Y. State Atty. Gen., Barbara Gott Billet, Darrell M. Joseph, Office of the N.Y. State Atty. Gen., New York City, on the brief), for respondent-appellee.

Before: NEWMAN, Chief Judge, JACOBS and CABRANES, Circuit Judges.

JON O. NEWMAN, Chief Judge:

In *Ayala v. Speckard*, 89 F.3d 91 (2d Cir.), *modified on denial of rehearing*, 102 F.3d 649 (2d Cir.1996), this Court ruled that a defendant's constitutional right to a public trial is violated when a trial judge closes a courtroom for a valid reason but fails to consider, on his own motion, alternatives to closure that would adequately protect the state interest justifying the closure. That ruling governs this appeal by Howard Pearson from the October 26, 1995, judgment of the District Court for the Southern District of New York (Peter Leisure, District Judge) denying his petition for a writ of habeas corpus to challenge his state court conviction for selling cocaine to an undercover police officer. The state court trial judge closed the courtroom during the testimony of the officer but did not consider any alternatives to courtroom closure. *Ayala* requires us to reverse.

## Facts

Pearson was arrested after an undercover police officer, conducting a routine "buy and bust" operation, purchased $10 worth of cocaine from him near the corner of 42nd Street and Eighth Avenue in Manhattan. The transaction was one of 200 effected by the officer in the preceding 15 months.

At trial in 1990, the prosecutor moved to have the courtroom closed during the officer's testimony, asserting that her safety and her work as an undercover would be compromised if she testified in open court. With the defendant's agreement, the courtroom was closed for a hearing to determine closure during the officer's trial testimony. In support of the closure request, the officer testified that she was continuing her undercover work in the neighborhood of her purchase from Pearson, that she feared public exposure, and that if her identity was revealed, "my cover could be blown and I could get killed." She also said this was her first time testifying as an undercover officer.

The trial judge acknowledged that there was no concern about jeopardizing "any ongoing investigation ... with respect to a

particular target or with a particular conspiracy." However, he continued,

> that doesn't undermine the fact that she is now actively engaged in that geographical area and she will continue to be. It doesn't undermine the fact that from her past 30 days and even before that involvement in that area, she has reason to fear retaliation from people who might put two and two together realizing that she has been the person engaging in the undercover purchase of narcotics from those people who do business in that location.
>
> I am persuaded that the courtroom should be closed.

State court trial tr. at 35. Defense counsel did not suggest any alternatives to closure, and the trial judge did not consider any on his own motion. The courtroom was closed during the officer's testimony, which was the core of the prosecution's case.

Pearson was found guilty by a jury and sentenced to two concurrent terms of five to ten years. His conviction was affirmed on direct review. *People v. Martinez*, 191 A.D.2d 151, 594 N.Y.S.2d 29 (1st Dep't 1993), *aff'd, People v. Martinez*, 82 N.Y.2d 436, 604 N.Y.S.2d 932, 624 N.E.2d 1027 (1993).

Magistrate Judge Grubin recommended denial of Pearson's habeas corpus petition. She concluded that the closure was permissible under *Waller v. Georgia*, 467 U.S. 39, 47, 104 S.Ct. 2210, 2215–16, 81 L.Ed.2d 31 (1984), because (1) the prosecution had established an overriding interest—the officer's safety and concealment of her identity, (2) the closure lasted only during the officer's testimony, (3) no alternatives were suggested to the trial judge by defendant's counsel, and (4) the judge's findings were adequate to support the closure. In concluding that the trial judge was not obliged to consider alternatives on his own motion, the Magistrate Judge explicitly relied on *Ayala v. Speckard*, 1995 U.S. Dist. LEXIS 8558, 1995 WL 373419 (S.D.N.Y. June 21, 1995), a District Court decision subsequently reversed by this Court, 89 F.3d 91. Judge Leisure accepted the recommendation and denied the habeas petition, also relying on the District Court's decision in *Ayala* to reject defendant's con-tention that the trial judge was required to consider alternatives on his own motion.

### Discussion

■ We agree with the District Court that three of the four factors outlined in *Waller* as requirements for courtroom closure were met in this case. First, the prosecution adequately supported an overriding interest in protecting the undercover officer from exposure of her identity. Her testimony that her undercover activity was continuing in the same neighborhood where she purchased cocaine from the defendant sufficed to indicate the State's strong interest in concealing her identity. We need not determine whether her fear of retaliation would have sufficed, though we note that this interest could be asserted by any officer presenting significant evidence against a criminal defendant. Second, we agree that the closure was no more extensive than required to protect the interest asserted. Finally, the State Court Judge's findings adequately supported his ruling.

■ However, *Waller* requires that "the trial court must consider reasonable alternatives to closing the proceeding." 467 U.S. at 48, 104 S.Ct. at 2216. Our decision in *Ayala* rejected the District Court's view that a trial judge does not have an obligation to consider, *sua sponte*, alternatives to closure. 89 F.3d at 96–97. That view became the holding of the Court upon consideration of the State's petition for rehearing. *See Ayala v. Speckard*, 102 F.3d 649, 651 (2d Cir.1996). In the pending case, the state court trial judge did not consider alternatives. Some alternatives, such as placing a screen between the undercover officer and the spectators, leaving the jury's view unobstructed, or perhaps disguising her appearance appear to have been worth considering. Of course, these alternatives, and perhaps others, might themselves be disadvantageous to a defendant. Screening might imply to the jury that the defendant has dangerous friends among the spectators, and a disguise might impair the jury's ability to assess the credibility of the undercover officer. Clearly, alternatives creating such risks should not be imposed on a defen-

dant who objects to them. *Ayala* requires only *consideration* of alternatives to closure.

■ Under the authority of *Ayala*, we conclude that the courtroom closure, without consideration of alternatives, denied the appellant his constitutional right to a public trial. *See Okonkwo v. Lacy*, 104 F.3d 21 (2d Cir.1997). Accordingly, the judgment of the District Court is reversed, and the case remanded with directions to issue the writ, unless the State retries the defendant within a reasonable time.

JACOBS and JOSÉ A. CABRANES, Circuit Judges, concurring:

We subscribe to the opinion of the Court, and agree in particular that we are required to reverse because of *Ayala* 's holding that a state judge violates the Sixth Amendment by closing the courtroom for the testimony of an undercover agent who is slated to return to the same duties at the same post, unless the court, on its own motion, has considered one or more lesser alternatives. *See Commodity Futures Trading Comm'n v. Dunn*, 58 F.3d 50, 53–54 (2d Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1846, 134 L.Ed.2d 947 (1996); *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986) ("This court is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*."), *overruled on merits en banc*, *United States v. Indelicato*, 865 F.2d 1370, 1381–82 (2d Cir.1989).

We write separately to record disagreement with the *Ayala* holding. Ordinarily, adherence to a rule once adopted, perfect or not, serves so many useful objectives that it is pointless to record disagreement with it in a subsequent decision, let alone so soon after the opinion that announces the rule. This appeal, however, is the third occasion in recent days in which we have granted a writ of habeas corpus on the *Ayala* ground. *See Okonkwo v. Lacy*, 104 F.3d 21 (2d Cir.1997); *Ayala v. Speckard*, 102 F.3d 649 (2d Cir. 1996). It is also remarkable that the state courts have adopted a contrary principle, *People v. Martinez*, 82 N.Y.2d 436, 444, 604 N.Y.S.2d 932, 624 N.E.2d 1027 (1993) (Kaye, C.J.), and seem to be perfectly ready to adhere to it, notwithstanding the *Ayala* deci-

sion. *See People v. Pepe*, —— A.D.2d ——, 653 N.Y.S.2d 101 (1st Dep't 1997) ("To the extent that *Ayala v. Speckard* might require a different result, we decline to follow that case." (citations omitted)); *see also People v. Lugo*, 650 N.Y.S.2d 102, 103 (1st Dep't 1996) (In resolving conflict between *Ayala* and contrary decision by New York Court of Appeals, the ruling of the New York Court of Appeals should be followed.); *People v. Nieves*, 648 N.Y.S.2d 583, 585 (1st Dep't 1996). If the judges of the New York State courts, enforcing the United States Constitution by their own lights, decline to apply the *Ayala* principle, *Ayala* relief may be available only in federal court. Since *Ayala* imposes a sua sponte obligation on state judges that state courts may not recognize or enforce, ordinary principles of waiver (by failure to object and failure to address on direct appeal) may lose some force, and resort to habeas corpus to enforce the *Ayala* principle may become commonplace.

We respectfully disagree with the holding in *Ayala* that the kind of closure effected here is unconstitutional unless the trial judge gives sua sponte consideration to alternatives. In *Ayala*, the supposed basis of that principle is given as *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), but *Waller* itself says nothing about sua sponte consideration of alternatives. Justice Powell, the author of *Waller*, earlier suggested that those who object to closure bear the burden of suggesting alternative measures. *Gannett Co. v. DePasquale*, 443 U.S. 368, 401, 99 S.Ct. 2898, 2916–17, 61 L.Ed.2d 608 (1979) (Powell, J., concurring). The Third Circuit agrees. *United States v. Raffoul*, 826 F.2d 218, 225 (3d Cir.1987). *But see Ayala*, 102 F.3d at 653 n. 3 (acknowledging Justice Powell's view, but noting that "[i]t could well be that Justice Powell altered his view in the interim").

The *Ayala* opinion also leans heavily on *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), pointing out that the Supreme Court reversed a courtroom closure—in part for failure to consider alternatives—where there had been closure pursuant to an unopposed

motion. *Ayala*, 102 F.3d at 653. But that case involved the First Amendment right of access to criminal proceedings. The consideration of alternatives sua sponte is more readily viewed as a necessary precaution in the First Amendment context, where often the parties asserting the constitutional right (usually the press and public) are not direct parties to the case.[1]

The *Ayala* principle seems to be singularly unproductive in terms of any incremental benefit to a defendant or to the values of an open and fair trial. *Ayala* suggests that there are *"numerous* obvious alternatives" to closure of the courtroom during testimony by the undercover agent, and describes several examples. 102 F.3d at 653 (emphasis added). Yet it is evident that the trial court was not required sua sponte to think of all of those particular alternatives; the constitutional error identified in *Ayala* is giving "zero consideration". *Id.* But this rule raises a number of practical questions and objections. Is it enough to properly consider and reject one or more alternatives as unfeasible if some feasible alternative can be identified afterward on a petition for habeas corpus? What incentive is there for any defendant to identify alternatives to closure? How will anyone know if alternatives were considered if (as may be the case) the state courts recognize no need to give such consideration, either under state law or the federal Constitution? Specifically, in this case, how do we know that the trial court did not take the step that it took because it was a lesser measure than closure of the entire trial?

The three alternatives to closure listed in *Ayala* seem to us more problematical—and prejudicial to the defendant—than what was done. (i) Placing a screen in front of a witness would cloak the undercover agent with glamour; and may suggest to the jury that the defendant and the defendant's friends and family are dangerous. (ii) That risk is only partially alleviated by asking the defendant whom he wants to remain in the courtroom (a step that may not have occurred to the trial judge here because the gallery was apparently nearly empty); we assume that a defendant has a great incentive under *Ayala* to be inclusive, and to insist that all the world witness what he regards as his unjust ordeal. (iii) Finally, use of a "disguise"—as the opinion in this case notes—could easily impair the jury's opportunity to observe the witness and the defense's opportunity to display the witness's reactions on cross-examination (not to mention the issue of what would be an appropriate costume).

One irony of the *Ayala* rule is that this defendant's habeas petition would be a whole lot stronger if the trial judge had rejected the closing of the courtroom, and ordered that the undercover agent testify in disguise notwithstanding the defendant's objection. The opinion in this case properly notes that the alternatives to closure may themselves be disadvantageous to a defendant. Thus, the effect of all this is that we are compelled by our newly-minted precedent in *Ayala* to grant a writ of habeas corpus by reason of the trial court's failure to make a record of considering unspecified alternatives to a step that in itself seems perfectly sensible—alternatives that need not be adopted and that (if adopted) might justify reversal or habeas relief on other grounds.

---

1. There is also a question as to whether closure for the testimony of a single witness is a drastic measure that, under *Waller*, requires consideration of alternatives at all. In *Waller* the trial court closed the entire proceeding (a suppression hearing). *Waller* in turn relies on *Press–Enterprise*, in which the virtual whole of a six-week voir dire was closed.

Even if every clearing of a courtroom is deemed to be a measure that requires consideration of alternatives, the trial judge here—and in *Ayala* and in *Okonkwo*—may (for all anyone knows) have judged the one-witness closure to be the least exclusionary alternative that the court could think of unaided by any better suggestion from the parties. The judge did not cast his ruling in these terms; but why should we expect to see that? State law does not require such a statement; and neither did we, until recent days.