Granville **MASON**, Petitioner,

v.

Sunny **SCHRIVER**, Superintendent,
**Wallkill Correctional Facility,**
**Respondent.**

No. 96 Civ. 6942(LAP).

United States District Court,
S.D. New York.

July 7, 1998.

---

**6.** See Master Agreement, Section 8.11, Schedule     5.2(b)(ii).

Granville Mason, New York City, pro se.

John P. Barry, Jr., Assistant Attorney General, New York City, for Respondent.

## ORDER

PRESKA, District Judge.

Granville Mason petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, based upon the closure of the courtroom during his trial for the testimony of the undercover officers responsible for his arrest. On March 11, 1997, the Honorable Andrew J. Peck, United States Magistrate Judge, issued a report and recommendation (the "Report") recommending that the petition be granted. The State objected to the Report on April 11, 1997. Because the Report relied upon decisions which ultimately culminated in the Court of Appeals' en banc decision in *Ayala v. Speckard,* 131 F.3d 62 (2d Cir.1997), *pet. for cert. filed,* No. 97–8962 (March 3, 1998), I reserved decision on the petition pending the Court of Appeals' resolution of that case.

I have reviewed the Report *de novo* pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C). For the reasons discussed below I adopt the Report in part and grant Mr. Mason's petition for a writ of habeas corpus.

## DISCUSSION

Mason was arrested in 1992 for selling three vials of crack cocaine to undercover Detective Carey Billingly, in a drug sale that was observed by undercover Police Office Linda Eaton–Lewis. Before trial, the People moved to close the courtroom for the testimony of the two undercover officers, and the court conducted a *Hinton* hearing to determine whether closure was justified. Because the Hinton proceedings lie at the center of this case, the Report's summary of that portion of the case are set forth below:

> Detective Billingly entered the courthouse for the Hinton Hearing through the judges' entrance and waited to testify in a non-public area. (H.17–18.) [1] Detective Billingly testified at the Hinton hearing

---

1. Citations to "H" refer to the transcript from the Hinton Hearing conducted on September 15, 1992, attached as Exhibit A of Respondent's Affi- davit in Opposition to Petitioner's Application for a Writ of Habeas Corpus.

that during his three years as an undercover detective, he participated in 450–500 narcotics purchases, confined to the Manhattan North Region, *i.e.,* from 59th Street to the northern end of Manhattan. (H.13, 16.) Detective Billingly testified that he remained involved in long[-]term narcotics operations and that, because some subjects had not yet been arrested, he planned to continue purchasing narcotics in those cases. (H.14). Detective Billingly testified that there were "lost subjects" from his undercover buys—that is, suspects who were not arrested. (H.15.) According to Detective Billingly, testifying in an open courtroom would "hinder [his] job, and [his] life would be in danger." (H.15.) Billingly had previously been threatened with "bodily harm and death," and in 1990, he had been forced to inhale drugs. (H.15.) Detective Billingly's identity as an undercover officer is not public knowledge, and he "would not feel comfortable" testifying in an open courtroom. (H.16.)

Police Officer Linda Eaton–Lewis testified at the Hinton hearing that during her six months as an undercover officer, she participated in at least 200 narcotics purchases in New York county. (H.19). Like Detective Billingly, Officer Eaton–Lewis testified that her identity as an undercover officer was not public knowledge, she had been verbally threatened in the part, and she would be unable to testify in a non-inhibited manner if the courtroom were open during her testimony. (H.20–21). She felt that testifying in an open courtroom would jeopardize her safety "[b]ecause the defendants can have people come into the courtroom and find out who" she is, and she "fear[s] for [her] safety." (H.20–21.)

At the conclusion of the very brief Hinton hearing—the combined testimony of Detective Billingly and Officer Eaton–Lewis took only ten pages (H.13–22)—defense counsel objected to closure of the courtroom. (H.24.) Defense counsel pointed out that all of the undercovers' buys occur above 59th Street (H.24), and, of course, the courthouse was well below 59th Street.

Report at 3–5. For their part, the People argued that closure was appropriate and cited four cases which allegedly supported their position. The trial court then granted the People's motion to close the courtroom, stating only:

> The application is granted as to each witness, and the courtroom will be closed during their testimony.
>
> I find the People have met their burden of showing that closure is justified in this case and the cases cited by [the Assistant District Attorney], in my view, are good authority.

(H.24–25). As explained below, the trial judge's disposition of the People's motion violated Mason's Sixth Amendment right to a public trial, and as a result Mason's writ must be granted.

## DISCUSSION

■ In *Waller v. Georgia*, the Supreme Court established a four-part test to determine when a criminal trial may be closed to the public. Under this test,

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the trial court] must make findings adequate to support the closure.

*Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984); *see United States v. King,* 140 F.3d 76, 81 (2d Cir.1998); *Ayala,* 131 F.3d at 69. In his Report Magistrate Judge Peck applied the *Waller* test in light of then-controlling Second Circuit law and determined that the third and fourth prongs were not met. Accordingly he found that closure was not justified. Although intervening law dictates a different outcome on the third prong of the test, the fourth-prong analysis is unchanged, and the writ must be granted.

■ As to the third prong, at the time Magistrate Judge Peck wrote the Report the controlling law of this Circuit placed a trial judge under an "absolute duty" to consider *sua sponte* possible alternatives to closure of

the courtroom during the undercover's testimony. *See Ayala v. Speckard,* 89 F.3d 91 (2d Cir.) ("*Ayala I* "), *modified* on *denial of reh'g,* 102 F.3d 649 (2d Cir.1996) ("*Ayala II* "). In *Ayala III,* however, the Court of Appeals, sitting en banc, overturned the panel decision in *Ayala II.* In so ruling, the Court of Appeals made clear that "a trial judge, having already considered closure during the testimony of one witness as an alternative to complete closure, is not required to consider *sua sponte* further alternatives to closure but needs to consider only further alternatives suggested by the parties." *Ayala III,* 131 F.3d at 64.

■ Here, the trial judge ordered the courtroom closed for only the testimony of the two undercover officers, not for the entire trial; in so doing, he considered, and ordered, the alternative of partial closure. Magistrate Judge Peck, applying *Ayala II,* properly concluded that the third *Waller* prong was not met because the trial judge did not *sua sponte* consider alternatives beyond partial closure. *Ayala III,* however, held that the trial judge's failure to consider alternatives beyond partial closure did not run afoul of *Waller* because the partial closure itself was an alternative to complete closure. Absent other suggestions from the parties, of which there were none, the trial judge had no further obligation to consider alternatives. Thus, in light of the intervening change in law precipitated by *Ayala III,* petitioner no longer prevails on the third *Waller* prong, and I must reject so much of the Report as holds to the contrary.[2]

■ *Ayala III* did not affect the fourth *Waller* prong, however, and the trial judge's failure on that prong mandates that Mason's petition be granted. As noted above, under *Waller* a trial judge "must make findings adequate to support the closure." *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216. *Waller's* findings requirement was derived from a decision the Court had rendered four months earlier in *Press–Enterprise Company v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). ("*Press–Enterprise I* "). In *Press–Enterprise I* the Court examined the First Amendment right of the press and the public of access to a criminal trial and identified the circumstances under which a trial judge may close criminal voir dire proceedings. The Court held that there existed a "presumption of openness" which "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." 464 U.S. at 510, 104 S.Ct. at 824. As such, trial judges must articulate the interest "along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.*

In *Waller* the Court explicitly applied the *Press–Enterprise I* standards to a criminal defendant's Sixth Amendment right to a public trial and soon thereafter reaffirmed the importance of the findings requirement in *Press–Enterprise Company v. Superior Court of California,* 478 U.S. 1, 13–14, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II* "). There, after finding that a qualified First Amendment right of access attaches to preliminary hearings in criminal matters, the Court held that "the proceedings cannot be closed unless *specific, on the record findings are made* demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " 478 U.S. at 13–14, 106 S.Ct. at 2743 (*quoting Press–Enterprise I* ) (emphasis added). Courts of this Circuit have recognized the findings requirement, in the context of both the First Amendment, *see United States v. King,* 140 F.3d 76, 81 (noting that the propriety of closure turns, *inter alia,* on "the extent to which the judge makes supportable findings," and affirming

---

2. Magistrate Judge Peck was aware of the provisional nature of his third-prong conclusion. *See* Report at 10 ("This Court notes that there now is disagreement among the judges of the Second Circuit as to the appropriateness of the requirement that trial judges must *sua sponte* consider alternatives.... The Court hopes that the issue will be clarified by the Second Circuit *en banc* or by the Supreme Court. Until either of those occur, however, this Court is required to follow the Second Circuit opinions in *Ayala I & II, Okonkwo[ v. Lacy,* 104 F.3d 21 (2d Cir.1997)] and *Pearson[ v. James,* 105 F.3d 828 (2d Cir.1997)] requiring the state trial judge *sua sponte* to consider alternatives to courtroom closure.")

closure of voir dire proceedings where the trial judge "made explicit findings to support the limitations he imposed"), and the Sixth Amendment, *see Guzman v. Scully,* 80 F.3d 772, 775 (2d Cir.1996) (finding that defendant's Sixth Amendment right to public trial was violated because, *inter alia,* trial judge's "conclusory justification" for closing courtroom during witness, testimony failed to satisfy fourth *Waller* prong); *Cosentino v. Kelly,* 926 F.Supp. 391, 398 (S.D.N.Y.1996) (finding after review of the record that trial court made findings adequate to support partial closure of trial).

In this case the trial judge made no meaningful findings for the record. As set out above, he stated only that:

> The application is granted as to each witness, and the courtroom will be closed during their testimony.
>
> I find the People have met their burden of showing that closure is justified in this case and the cases cited by (the Assistant District Attorney), in my view, are good authority.

(H.24–25). The judge's conclusory statement is plainly insufficient under *Press–Enterprise I, Waller,* and their progeny as it falls far short of the "explicit" and "specific" recorded findings necessary to support closure. As Magistrate Judge Peck properly concluded, "the trial judge's failure to make any findings as to whether issues of the undercover's safety or the State's interest in maintaining the undercover's 'cover' justified closure under *Waller's* first prong ... require[s] granting Mason's habeas petition for failure to satisfy *Waller's* fourth prong." Report at 12 (*citing Guzman,* 80 F.3d at 776).

Accordingly, I adopt the Report and Recommendation to the extent that it concludes that *Waller's* fourth prong was not satisfied. As a result, Mason's petition must be granted.

## CONCLUSION

For the reasons stated above, the writ of habeas corpus is granted, and the petitioner is to be released from custody if he is not retried within a reasonable time. The Clerk of the Court shall mark this action closed.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Granville Mason's petition for a writ of habeas corpus raises an issue that has been addressed in three recent Second Circuit cases—the propriety of closure of a state criminal trial during the testimony of an undercover police officer. *See Pearson v. James,* 105 F.3d 828 (2d Cir.1997); *Okonkwo v. Lacy,* 104 F.3d 21 (2d Cir.1997); *Ayala v. Speckard,* 102 F.3d 649& 89 F.3d 91 (2d Cir.1996). For the reasons discussed below, I recommend that Mason's habeas petition be granted based upon these recent Second Circuit decisions. Petitioner Mason's second habeas ground—that the reasonable doubt jury instruction was improper—lacks merit.

### FACTS

On December 10, 1992, petitioner Granville Mason was convicted in Supreme Court, New York County, of criminal sale of a controlled substance and sentenced to five to ten years imprisonment as a second felony offender. (Petition, dated 8/15/96, ¶¶ 1–4.) During Mason's trial, the courtroom was closed for the testimony of two undercover officers. The First Department affirmed Mason's conviction, holding that the "undercover officers' Hinton-hearing testimony 'established the necessary spatial and temporal relationship among the courthouse, the location of defendant's arrest, and the anticipated geographic location of [their] future investigative work' to warrant closure of the courtroom." *People v. Mason,* 216 A.D.2d 149, 149, 628 N.Y.S.2d 648, 649 (1st Dep't 1995) (*quoting People v. Brown,* 214 A.D.2d 438, 438, 625 N.Y.S.2d 506, 507 (1st Dep't 1995)) The First Department further held that:

> Both of the undercover officers were involved in ongoing long-term investigations in which some of the buy subjects had not yet been arrested, they continued to participate in "buy and bust operations" within the territory covered by Manhattan North Narcotics Division, which included the area north of 59th Street in Manhattan and encompassed the sales location, and both had pending cases from prior arrests.

*People v. Mason,* 216 A.D.2d at 150, 628 N.Y.S.2d at 649.[1] The Court of Appeals denied leave to appeal on August 24, 1995. *People v. Mason,* 86 N.Y.2d 797, 632 N.Y.S.2d 511, 656 N.E.2d 610 (1995).

On August 15, 1996, petitioner Mason filed his present habeas corpus petition pursuant to 28 U.S.C. § 2254, claiming that:

(1) his Sixth Amendment right to a public trial was violated due to the courtroom closure during the testimony of two undercover officers; and (2) the trial court improperly charged the jury on reasonable doubt.

### The Closure Hearing

On April 15, 1992, petitioner was arrested for selling three vials of crack cocaine to Detective Carey Billingly, an undercover detective with the police department's Manhattan North Narcotics Division. (*E.g.,* Trial Tr. at 37–39.) The drug sale was observed by undercover police officer Linda Eaton–Lewis. (*Id.*)

Before trial, the People moved to close the courtroom for the testimony of the two undercover officers. (9/15/92 Hinton Hearing [hereafter "H."]. at 11–12.) Accordingly, a Hinton hearing was conducted to determine whether closure was warranted.

Detective Billingly entered the courthouse for the Hinton hearing through the judges' entrance and waited to testify in a non-public area. (H.17–18.) Detective Billingly testified at the Hinton hearing that during his three years as an undercover detective, he participated in 450–500 narcotics purchases, confined to the Manhattan North region, *i.e.,* from 59th Street to the northern end of Manhattan. (H.13, 16.) Detective Billingly testified that he remained involved in long term narcotics operations and that, because some subjects had not yet been arrested, he planned to continue purchasing narcotics in those cases. (H.14.) Detective Billingly testified that there were "lost subjects" from his undercover buys—that is, suspects who were not arrested. (H.15.) According to Detective Billingly, testifying in an open courtroom

would "hinder [his] job, and [his] life would be in danger." (H.15.) Billingly had previously been threatened with "bodily harm and death," and in 1990, he had been forced to inhale drugs. (H.15.) Detective Billingly's identity as an undercover officer is not public knowledge, and he "would not feel comfortable" testifying in an open courtroom. (H.16.)

Police Officer Linda Eaton–Lewis testified at the Hinton hearing that during her six months as an undercover officer, she participated in at least 200 narcotics purchases in New York County. (H.19.) Like Detective Billingly, Officer Eaton–Lewis testified that she was involved in long-term narcotics operations, and planned to continue to purchase narcotics from those subjects who were not yet apprehended. (H.19–20.) Officer Eaton–Lewis testified that her identity as an undercover officer was not public knowledge, she had been verbally threatened in the past, and she would be unable to testify in a non-inhibited manner if the courtroom were open during her testimony. (H.20–21.) She felt that testifying in an open courtroom would jeopardize her safety "[b]ecause the defendants can have people come into the courtroom and find out who" she is, and she "fear[s] for [her] safety." (H.20–21.)

At the conclusion of the very brief Hinton hearing—the combined testimony of Detective Billingly and Officer Eaton–Lewis took only ten pages (H.13–22)—defense counsel objected to closure of the courtroom. (H.24.) Defense counsel pointed out that all of the undercovers' buys occur above 59th Street (H.24), and, of course, the courthouse was well below 59th Street.

The trial judge granted the People's motion to close the courtroom during the undercovers' trial testimony, stating in full:

> The application is granted as to each witness, and the courtroom will be closed during their testimony.
>
> I find the People have met their burden of showing that closure is justified in this case and the cases cited by [the Assistant

---

1. The First Department found Mason's other contentions "to be without merit." *Id.* The State does not dispute that he raised his present challenge to the trial court's reasonable doubt charge before the First Department. (*See* Affidavit of Assistant Attorney General John P. Barry, Jr., dated 1/17/97, ¶ 6 & Ex. B.)

District Attorney], in my view, are good authority.

(H.24–25.) [2]

### The Jury Instructions

Petitioner Mason's habeas petition also challenges the trial court's reasonable doubt charge. (Petition ¶ 12(B).) Mason contends that the charge "required the jurors to articulate their reasons for acquittal." (*Id.*)

At the start of the trial, in his introductory instructions, the trial judge told the jurors that:

> As Mr. Mason sits there now, he carries with him the presumption of innocence. *There is no burden on Mr. Mason* or Ms. Martone his attorney *to do anything,* to prove in addition or to say anything at any time during the course of this trial.

> To the contrary, it is the People who brought these charges against Mr. Mason, and it is the People's burden and responsibility to prove Mr. Mason's guilt. *That burden never shifts from the People.* It is the People's responsibility to prove Mr. Mason guilty of one or more of the charges submitted for your consideration beyond a reasonable doubt.

> ... [I]f the People have not proven the defendant's guilt beyond a reasonable doubt, then it will be your responsibility to return a verdict of not guilty as to that charge.

(Trial Transcript ["Tr."] at 28–29, emphasis added.)

At the close of the case, the trial judge reiterated in virtually identical language that it was the People's burden to prove defendant's guilt beyond a reasonable doubt. (Tr. at 344–45.) The trial judge again stressed that the burden never shifts from the People. (Tr. 345.) The trial judge explained what is a "reasonable" doubt, in part, as follows:

> If when you retire to deliberate, and you discuss this case, and discuss it you should, for the process of reaching a verdict involves discussion and the give and take of your recollections and opinions of the evi-

dence, and one of you says, I have a doubt about this aspect of the case and a fellow juror responds what is the reason for your doubt? If you can then give a reason based on the evidence or lack of evidence, that is a reasonable doubt. If you can't it is not a reasonable doubt.

(Tr. 347–48.) Defense counsel objected to this portion of the judge's charge. (Tr. 367–68.)

### ANALYSIS

### I. APPLICATION OF THE FOUR PRONG ANALYSIS OF THE SUPREME COURT'S WALLER v. GEORGIA DECISION, AS EXPLICATED BY RECENT SECOND CIRCUIT DECISIONS

"There are two sources of the presumption that criminal court proceedings are open to the public—the First Amendment, and also the Sixth Amendment," which provides: "In all criminal prosecutions, the accused shall enjoy the right to a ... public trial." *E.g., Ayala v. Speckard,* 102 F.3d 649, 650, 654 (2d Cir.1996) (*Ayala II* ) & 89 F.3d 91, 94 (2d Cir.1996) (*Ayala I* ). The Supreme Court has noted that public trials ensure fairness to the defendant, promote responsibility on the part of judges and prosecutors, encourage witnesses to come forward, and discourage perjury. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984); *see also, e.g., In re Oliver,* 333 U.S. 257, 266–72, 68 S.Ct. 499, 504–07, 92 L.Ed. 682 (1948); *Ayala I,* 89 F.3d at 94. The Supreme Court also has held, however, that "the right to an open [criminal] trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia,* 467 U.S. at 45, 104 S.Ct. at 2215.

In *Waller v. Georgia,* the Supreme Court established a four-part test to determine when a criminal trial may be closed to the public: [1] "the party seeking to close the hearing must advance an overriding interest

---

**2.** Defense counsel then requested that the court allow a senior Legal Aid attorney who was helping trial counsel to remain in the courtroom.

(H.25.) The ADA consented and the court allowed it. (H.25–26.)

**328**

that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the trial court] must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. at 48, 104 S.Ct. at 2216.[3] The Second Circuit has reaffirmed and explicated the *Waller* test in its recent decisions. *Pearson v. James*, 105 F.3d at 830–31; *Okonkwo v. Lacy*, 104 F.3d at 24–25; *Ayala II*, 102 F.3d at 651–54; *Ayala I*, 89 F.3d at 94–96.[4]

All four prongs of the *Waller* test must be satisfied or the closure violates a defendant's Sixth Amendment right to a public trial. *See, e.g., Ayala II*, 102 F.3d at 651.

The Supreme Court also has made clear that "while some State interests may justify courtroom closure, '[s]uch circumstances will be rare, however, and the balance of interests must be struck with special care.'" *Ayala II*, 102 F.3d at 650 (quoting *Waller v. Georgia*, 467 U.S. at 45, 104 S.Ct. at 2215).[5]

In Mason's case, habeas relief is warranted because the third and fourth *Waller* prongs

have not been met. We discuss each of those in turn.

### A. *The Third Waller Prong: The State Trial Court Here Did Not Consider Reasonable Alternatives to Closure*

In *Ayala I*, the Second Circuit made crystal clear that the trial judge is under an "absolute duty" to *sua sponte* consider possible alternatives to closure of the courtroom during the undercover's testimony. *Ayala I*, 89 F.3d at 96. The Second Circuit reaffirmed that holding on rehearing, and suggested some "obvious" alternatives for consideration:

[T] here are numerous obvious alternatives that were never considered. For example, a strategically placed chalkboard may have allowed the public into the courtroom without seeing the identity of the undercover officer. Another approach might have been to ask [the defendant] who he wanted in the courtroom, then cause the State to show why any such person should not be present. *See, e.g., Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994), [*cert. denied*, 513 U.S. 1102, 115

**3.** *See also, e.g., Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984); *Vidal v. Williams*, 31 F.3d 67, 68–69 (2d Cir.1994), *cert. denied*, 513 U.S. 1102, 115 S.Ct. 778, 130 L.Ed.2d 672 (1995); *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir .1992); *Ip v. Henderson*, 710 F.Supp. 915, 917–18 (S.D.N.Y.), *aff'd mem.*, 888 F.2d 1376 (2d Cir.1989).

**4.** Where the closure of the courtroom is not total (all persons excluded for the entire trial) but only "partial" (closure for a limited part of the trial or only certain persons excluded), the four part *Waller* test applies, but it appears that "the party seeking to · close the courtroom must show a 'substantial probability' that an 'overriding interest' will be prejudiced." *Ayala II*, 102 F.3d at 652; *Ayala I*, 89 F.3d at 95.

**5.** The Second Circuit in *Ayala II* commented, however, that the "Supreme Court's observation that courtrooms should be closed to the public only rarely casts an interesting light on what appears to be a relatively common practice in New York courts." *Ayala II*, 102 F.3d at 650 n. 1.

The New York Court of Appeals has expressly adopted the *Waller* standard. *People v. Martinez*, 82 N.Y.2d 436, 442–43, 604 N.Y.S.2d 932, 935–36, 624 N.E.2d 1027 (1993); *People v. Kan*, 78

N.Y.2d 54, 57–59, 571 N.Y.S.2d 436, 438–39, 574 N.E.2d 1042, *reargument denied*, 78 N.Y.2d 1008, 575 N.Y.S.2d 458, 580 N.E.2d 1061 (1991).

However, even after *Kan* and *Martinez*, New York trial and intermediate appellate courts have failed to consistently comply with the requirements of *Waller*, leading to apparently inconsistent results. *Compare, e.g., People v. Tapia*, 207 A.D.2d 286, 615 N.Y.S.2d 380 (1st Dep't 1994), *app. denied*, 84 N.Y.2d 910, 621 N.Y.S.2d 528, 645 N.E.2d 1228 (1994) (holding under *Waller*, *Martinez* and *Kan* that closure was improper where only testimony supporting closure was that the undercover officer was actively engaged throughout the Bronx), *with People v. Jackson*, 171 A.D.2d 756, 567 N.Y.S.2d 310 (2d Dep't), *app. denied*, 78 N.Y.2d 967, 574 N.Y.S.2d 947, 580 N.E.2d 419 (1991) (holding, without citing *Waller*, *Kan* or *Martinez*, that the trial court did not err in closing the courtroom where undercover was still active in Brooklyn).

Moreover, the New York courts have not adopted *Ayala*'s requirement that the trial court *sua sponte* consider alternatives to closure. *See Pearson v. James*, 105 F.3d at 831 (Jacobs & Cabranes, J., concurring) (noting that the state courts have adopted a contrary principle to *Ayala*'s requirement of the sua sponte consideration of alternatives to closure, "and seem to be perfectly ready to adhere to it, notwithstanding the Ayala decision").

S.Ct. 778, 130 L.Ed.2d 672 (1995) ]. Still another approach could have been for [the undercover officer] to have concealed his identity in some other manner, such as disguise. From our appellate perspective we cannot say whether any of these less broad alternatives were feasible. But there was zero consideration given to them.

*Ayala II,* 102 F.3d at 653. The need to *sua sponte* consider these alternatives was reiterated by the Second Circuit in *Okonkwo v. Lacy,* 104 F.3d at 25–26, and *Pearson v. James,* 105 F.3d at 830–31.

The Court notes that there now is disagreement among the judges of the Second Circuit as to the appropriateness of the requirement that trial judges must *sua sponte* consider alternatives. *Pearson v. James,* 105 F.3d at 831–32 (Jacobs & Cabranes, J., concurring). The Court hopes that the issue will be clarified by the Second Circuit *en banc* or by the Supreme Court. Until either of those occur, however, this Court is required to follow the Second Circuit opinions in *Ayala I & II, Okonkwo* and *Pearson* requiring the state trial judge *sua sponte* to consider alternatives to courtroom closure.

It is obvious that the state judge for Mason's trial did not consider any alternatives. At the end of Mason's Hinton hearing, the state trial judge stated in full that "[t]he application is granted as to each witness, and the courtroom will be closed during their testimony. I find the People have met their burden of showing that closure is justified in this case and the cases cited by [the ADA] in my view, are good authority." (H.24–25.) It is clear from this language that the court did not consider reasonable alternatives to closing the courtroom during the undercover officers' testimony. Therefore, the courtroom closure denied Mason his constitutional right to a public trial. *Ayala II,* 102 F.3d at 653; *Ayala I,* 89 F.3d at 96; *Okonkwo v. Lacy,* 104 F.3d at 25–26; *Pearson v. James,* 105 F.3d at 830–31. Accordingly, I recommend that Mason's habeas petition should be granted.

### B. *The Fourth Waller Prong: The State Trial Court Did Not Make Adequate Findings To Support Closure*

Under *Waller's* fourth prong, in order for a reviewing court to determine whether the order was proper, the trial court must make findings that are adequate to support closure. *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216. Here, the trial judge stated only his conclusion that the "People have met their burden of showing that closure is justified in this case." (H.24–25.) The trial judge did not discuss, much less make findings about, any of *Waller's* four prongs (or their state equivalents). As is obvious from the preceding subsection, the trial judge made no findings as to alternatives to closure. But even if *sua sponte* consideration of alternatives were not required, the trial judge's failure to make any findings as to whether issues of the undercover's safety or the State's interest in maintaining the undercover's "cover" justified closure under *Waller's* first prong would require granting Mason's habeas petition for failure to satisfy *Waller's* fourth prong. *See, e.g., Guzman v. Scully,* 80 F.3d 772, 776 (2d Cir.1996) ("conclusory justification" fails to satisfy fourth *Waller* prong).[6]

---

**6.** It is unclear whether the first prong—a substantial probability of prejudice to an overriding state interest—was satisfied. It "is undisputed that the State has an overriding interest in protecting the safety, as well as the confidentiality, of its undercover officers." *Ayala I,* 89 F.3d at 95. But there must be a "nexus" between the undercover's testimony in a particular case and such danger. *Id. Ayala I* makes clear that "the mere possibility that someone with the ability and inclination to injure [the undercover] will be present in the courtroom during his brief testimony" is not sufficient to justify closure. *Id.* "To hold otherwise would establish a rule that, despite the Sixth Amendment, no undercover officer who intends to return to undercover work need testify in open court." *Id.* at 96.

In *Okonkwo v. Lacy,* the Second Circuit identified a second State interest:

We now identify the interest of a law enforcement agency in maintaining the cover of its agents as a basis for satisfying the first prong of the Waller test if the state establishes a substantial probability of prejudice to that interest in the absence of closure.

*Okonkwo v. Lacy,* 104 F.3d at 25. *See also Pearson v. James,* 105 F.3d at 830 (undercover's testimony that her undercover activity was continuing in the neighborhood where she purchased drugs from the defendant "sufficed to

## II. *THE CHALLENGED PORTION OF THE STATE TRIAL COURT'S REASONABLE DOUBT CHARGE, VIEWED IN CONTEXT, DOES NOT JUSTIFY HABEAS RELIEF*

For the sake of completeness, this Report and Recommendation also will address Mason's second habeas ground.

Mason argues that the trial court's reasonable doubt charge required jurors to articulate their reasons for acquittal and, by doing so, improperly shifted the burden of proof. (Petition ¶ 12(B).) For the reasons set forth below, I find that the trial court's charge adequately conveyed the concept of reasonable doubt in the context of the entire charge.

Over twenty years ago, the Supreme Court stated that it already was "well-established" that jury instructions "must be viewed in the context of the overall charge," and a "single instruction to a jury may not be judged in artificial isolation." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *see also, e.g., Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990) ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole."); *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975) (quoting *Cupp* ).

In *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Supreme Court held that "so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in

advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Id.,* 114 S.Ct. at 1243 (citations omitted, brackets in original).

Petitioner Mason challenges the following part of the trial court's reasonable doubt charge as improperly shifting the burden:

> If when you retire to deliberate, and you discuss this case, and discuss it you should, for the process of reaching a verdict involves discussion and the give and take of your recollections and opinions of the evidence, and one of you says, I have a doubt about this aspect of the case and a fellow juror responds what is the reason for your doubt? If you can then give a reason based on the evidence or lack of evidence, that is reasonable doubt. If you can't, it is not a reasonable doubt.

(Tr. 347–48.) However, the court repeatedly stressed, both in its preliminary instructions and in its final charge, that Mason is presumed innocent, it is the People's burden to prove guilt beyond a reasonable doubt, and the burden never shifts from the People. (Tr. 28–29, 344–45.)

The Second Circuit, in contrast to the New York courts, has opined that jury instructions that imply that jurors should be able to give a reason for their doubts are "perhaps unwise" and are "not approved;" nevertheless, where the jury instructions taken as a whole clearly instruct that the burden is on the government and that the defendant is never required to prove his innocence, the charge as a whole will not be held to be erroneous.[7] *See, e.g., Vargas v. Keane,* 86

---

indicate the State's strong interest in concealing her identity," satisfying *Waller*'s first prong).

Application of maintaining the undercover's effectiveness standard remains unclear. It would seem to allow the very *per se* satisfaction of the first *Waller* prong for every undercover who intends to return to undercover work that ·the Second Circuit rejected in *Ayala I* when considering an undercover's safety concerns. In any event, because the state trial court here did not satisfy the third and fourth *Waller* prongs, I need not decide whether the first *Waller* prong is satisfied.

7. The New York courts have long approved of language defining a reasonable doubt as one

which a juror could articulate or express, if called upon to do so. For instance, in *People v. Antommarchi,* the New York Court of Appeals stated that: "it is not surprising, nor improper, for a court to instruct the jury that a reasonable doubt is one for which a reason can be given, nor to augment that definition with an explanation that the doubt should be sufficiently clear *so that the juror would be capable of giving a reason for his or her views....* Consequently, for over 100 years we have approved language defining a reasonable doubt as one which a juror could, if called upon to do so, express or articulate." *People v. Antommarchi,* 80 N.Y.2d 247, 252, 590 N.Y.S.2d 33, 36, 604 N.E.2d 95 (1992) (emphasis

F.3d 1273, 1276–79 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *Chalmers v. Mitchell,* 73 F.3d 1262, 1268 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 106, 136 L.Ed.2d 60 (1996); *United States v. Davis,* 328 F.2d 864, 867–68 (2d Cir.1964) (Friendly, J.). Here, as in those cases, the trial court's entire charge made clear that Mason was not required to prove his innocence and that the burden rested on the People.

Thus, when considered in the light of the entire jury charge, the trial court's instruction on reasonable doubt did not constitute reversible error sufficient to justify habeas relief.

### CONCLUSION

For the reasons set forth above, I recommend that the Court grant Mason's petition for a writ of habeas corpus because the closure of the trial to the public during the testimony of the undercover officers was improper under two of *Waller*'s four prongs, as interpreted by the Second Circuit's recent *Ayala v. Speckard, Okonkwo v. Lacy* and *Pearson v. James* decisions.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 1320, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Preska. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993),

*cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

added); *see also, e.g., People v. Uraca,* 195 A.D.2d 377, 600 N.Y.S.2d 458 (1993) (not error to charge the jury that a reasonable doubt "is a doubt for which a juror could give a reason, if he or she were called upon to do so in the jury room.").